MARY B. BURTON, Respondent, v. KANSAS CITY, Appellant.

Kansas City Court of Appeals, July 6, 1914.

1. NEGLIGENCE: Municipal Corporations: Repairing Streets: Duty to Maintain Warning Lights or Barriers. A city street had been repaved from the west street car rail east to the east side of the street, but the portion west of this rail was torn up and was some six to twelve inches below the level of the finished portion. A driver of a wagon, unacquainted with the condition of the street, drove east on an intersecting street and then turned north to go up the east or finished side of the street being repaired, not knowing, however, of the fact of its being in process of repair. Owing to a buggy and a barrel wagon on the paved portion at the corner, he attempted to go to the left of them and went upon the east street car track. A northbound car came behind him at the same moment and rang the gong for him to get out of its way. To do so he drove still further to the left and the front left wheel dropped over into the unfinished portion of the street throwing him out and killing him. It was dark. There were neither warning lights nor barriers to notify travellers that the street was not safe and withdrawn from travel. Plaintiff sued basing her case on the negligence of the city in failing to maintain lights and barriers. The city defended upon the ground that a city arc light at the intersection was sufficient to so light the situation as to dispense with warning lights. Held, that the questions of the city's negligence and of deceased's contributory negligence were for the jury.

2. ——: ——: ——: ——: **Sufficiency of Street Light to Take the Place of Warning Lights or Barriers.** In view of the well-known tendency of an arc light to suddenly go out for a time, it may be seriously questioned whether the presence of such a light 80 to 90 feet distant from a defect in a street would authorize the city to dispense with the use of lights or barriers. But the case having been submitted upon the proposition that if the arc light, when burning, was sufficient to enable travellers in the exercise of ordinary care to see the condition of the street, then plaintiff could not recover, and the jury having found that it was not sufficient, its finding will not be disturbed. There are too many conditions under which an arc light might be insufficient, to enable a court to say, as matter of law, that there was no liability.

3. **DEFECTIVE STREET: Notice to City.** Where a city authorizes a contractor to do something rendering a street unsafe which would require warning lights, no notice of the contractor's failure to place them need be proved since the primary duty is upon the city to keep its streets reasonably safe.

4. ——: ——: ——: **Absence of Lights at Former Times.** Even if there was no necessity of proving notice to the city of the failure to place lights or barriers, evidence that none had been placed for some time prior to the night of the accident was harmless since there was no contention that the lights or barriers were there, but the case was defended upon the theory that the arc light supplied their place and dispensed with the necessity of having them.

5. ——: ——: ——: ——: **Condition of Streets at Other Points.** Evidence that the unfinished condition of the street extended continuously north from the place of the accident to the next block was admissible as showing that travel was confined to the east side. It was also permissible to show that the rest of that block was unfinished and that no lights were there, since if they were they might serve to call attention to the unfinished and defective condition of the street at the place of the accident. Where the record shows that the evidence as to the torn up condition of other blocks was given in answer to questions as to the place where the accident occurred and no objection was made to such evidence nor request to have it stricken out, its admission will not constitute reversible error.

6. **CONDUCT OF COUNSEL: Closing Argument.** Where the city was defended by counsel from the city counsellor's office and by counsel representing a surety company on the bond of the contractor repaving the street, it was not error for the plaintiff's

counsel to tell the jury there was no evidence whether counsel for defendant were disinterested public servants, because such statement was made in answer to the assertion of opposing counsel that they were "disinterested public servants of Kansas City" which was not true in point of fact.

7. ———: ———. It was not reversible error for plaintiff's counsel to merely call attention to the elements of plaintiff's damage recognized by the law, where nothing was said in the way of an appeal to their prejudices or calculated to unduly arouse their sympathies. The damage sustained by plaintiff in the loss of her husband is not confined to the mere amount of money he was able to earn. The additional burdens cast upon plaintiff by his death may be considered by the jury.

Appeal from Jackson Circuit Court.—*Hon. Kimbrough Stone,* Judge.

AFFIRMED.

*A. F. Evans, Frank Hagerman, E. E. Ball* and *Clyde Taylor* for appellant.

(1) The court committed reversible error in admitting evidence of absence of warning lights and barriers on nights other than and remote from the time in question. Schlinski v. St. Joseph, 156 S. W. 823; Mehan v. St. Louis, 217 Mo. 35; Bailey v. Kansas City, 189 Mo. 511; Goble v. Kansas City, 148 Mo. 475; Calcaterra v. Iovaldi, 123 Mo. App. 352; Horr v. Railway Co., 156 Mo. App. 654; Smart v. Kansas City, 91 Mo. App. 586. (2) The court committed reversible error in admitting evidence of the condition of the street at points remote from that in issue. McNeil v. Cape Girardeau, 153 Mo. App. 429; Bowles v. Kansas City, 51 Mo. App. 421; Hipsley v. Railroad Co., 88 Mo. 348; Sidekum v. Railroad Co., 93 Mo. 400; Goble v. Kansas City, 148 Mo. 475. (3) Plaintiff's first instruction was erroneous because it assumed the existence of a fact in issue, i. e., it assumed that the depression in the street was neither guarded nor lighted. Gessnes v. Street Railway Co., 132 Mo. App. 586; Linn v. Bridge

Company, 78 Mo. App. 117; Warrington v. Bird, 168 Mo. App. 388; Clark v. Railway, 166 Mo. App. 158. (4) Misconduct of plaintiff's counsel in his closing argument and erroneous rulings of the court with respect thereto demands a reversal of the judgment. Gore v. Brockman, 138 Mo. App. 235; Trent v. Printing Company, 141 Mo. App. 452.

*A. F. Drake* and *T. J. Madden* for respondent.

TRIMBLE, J.—Plaintiff sued for damages sustained in the death of her husband which she alleges was caused by the negligence of the city in failing to guard or light an unsafe place in the street into which the wheel of the wagon deceased was driving dropped, throwing him out and killing him. The answer was a general denial with a plea of contributory negligence growing out of the alleged lack of ordinary care on the part of the deceased, and in his driving on the left hand side of the street in violation of a city ordinance regulating travel. From a verdict for plaintiff defendant appeals.

Defendant's main contention is that plaintiff is not entitled to recover.

Wyoming street runs north and south. Nineteenth street runs east and west and crosses Wyoming at right angles. Both of these streets are traversed by street car lines, and there is also heavy stockyards traffic thereon. For several months before the date in question Wyoming street, north of the intersection, was being re-paved by a contractor under contract with the city. On the day of the deceased's hurt and prior thereto, that part of Wyoming street occupied by the street car tracks and the portion east of said tracks had been repaved with brick, and traffic both north and south went over that part of the street. The part of the street west of the tracks had been torn up for several weeks and possibly months. The concrete base

was probably in, but the bed for the brick was not, leaving the surface rough, full of depressions, and from six to twelve inches lower than the surface of the street where the brick were in. As the paving had been completed up to the west street car rail, this left an offset at the west side of said rail of from six to twelve inches. Whether this torn up or rather unfinished condition of the west side of the street extended down to the intersection with 19th street is not quite clear from the record. One would infer from expressions of some of the witnesses that it did not extend quite to the intersection though this is comparatively unimportant. At any rate, north of the intersection and west of the west street car rail, the street was unfit for travel and was lower than the surface of the rail which corresponded to the surface of the finished portion of the street. This unfinished, lower, condition extended from the west rail to the curbing on the west side of the street.

About a quarter to six o'clock in the evening of November 30, 1912, deceased, sitting on the right in the driver's seat, drove his wagon east on 19th to the intersection and then turned north on Wyoming. His seat was fully eight feet above the ground. At that hour traffic on the street was somewhat congested. On the portion of Wyoming street east of the street car tracks (which was the right hand side of the street to deceased) there was standing a buggy and also a large barrel wagon. Deceased, to get by these, drove to his left upon the east street car track, but a street car coming from behind and close to him on that track began sounding the gong for him to get out of its way. He, therefore, went still further to his left and drove upon the west car track to avoid the wagon and buggy and to let the street car pass. When he did so the left front wheel of his wagon dropped into the unfinished and lower portion of the street immediately west of the west rail throwing him headlong to the

ground and fracturing his skull, from which he died shortly after. The injury occurred some eighty feet, or possibly more, north of the above mentioned intersection.

At that time of the year darkness fell about 4:30 or five o'clock, and on this evening it was gloomy and, if not actually raining at the time, was threatening rain. It was shown to be raining soon after. An electric arc light was suspended over the two streets a little to the south and east of the center of the intersection. The evidence, however, is amply sufficient to show or to warrant the finding that it was not burning on this evening.

The case is bottomed on the alleged negligence of the city in not placing warning lights or barriers over the unfinished portion of the street so as to notify travellers of the danger and that that part of the street was withdrawn from public use.

There is no dispute over the fact that the street was unfinished and that the depression existed west of the west rail as above detailed. The evidence was clear that the left front wheel of the wagon dropped into the depression and that deceased was thereby thrown from the wagon and killed. Neither is there conflicting evidence as to the absence of barriers and guard lights. Witnesses for both plaintiff and defendant testified there were none and others said they did not see any. No one claimed that there were any. Neither can it be claimed that there is evidence carrying an inference that warning lights were there. In fact, the issue at the trial was, not whether there were warning lights or barriers in place at the time of the accident, but whether their presence was rendered unnecessary by the arc light at the intersection. The city took the position that the arc light was sufficient to brilliantly light the situation so that it was negligence to drive onto the unfinished side of the street. We have carefully read the record and there is no

conflict in the evidence as to the absence of barricades and warning lights.

The contention of the city is that under the evidence and the physical facts in the case there was no evidence from which the jury could lawfully find that the arc light was not sufficient to dispense with the necessity of warning lights or barriers; that if the arc light was out on this occasion it occurred so shortly before the accident as not to give the city notice thereof in time to remedy the situation; and that the unfinished and lower surface of the street, being a broad expanse occupying the entire west side of the street, was so plain and obvious as to be patent to a traveller in the exercise of ordinary care.

The unfinished portion of the street was not fit for travel. The evidence tended to show that the arc light was not burning but was out at the time. In view of the well-known tendency, likelihood, and possibility of an arc light to suddenly fail temporarily, or go out for a time, it may be very seriously questioned whether the presence of an arc light eighty or ninety feet distant from a defect in a street would authorize the city to dispense with the use of warning lights, specifically calling attention to the defects, or of barriers notifying travellers that a portion of the street was withdrawn from travel. And if the city did not have the right to rely upon the arc light to take the place of warning lights or barriers, then the city would be liable even if the arc light was ordinarily sufficient to light the place but went out shortly before the accident affording the city no time to supply its place. However, it is not necessary to decide this question, since plaintiff was willing to litigate the issues upon the battleground marked out by defendant, namely, that if the arc light, *when burning,* was sufficient to so light the place in question as to enable travellers in the exercise of ordinary care to see the

condition of the street, then plaintiff could not recover. Plaintiff's instruction contained a provision putting the case on this basis; and defendant had an instruction that if the arc light, when burning, would light the place where deceased fell, so that he could have seen the situation in the exercise of ordinary care, then the city was not negligent and the finding must be for defendant even though the jury might believe from the evidence that said light was not burning at the time. Therefore, in view of the basis upon which this case was submitted to the jury, it is immaterial whether the light was burning at the time of the accident or had gone out, so far as the decision upon the question of defendant's demurrer is concerned. The case having been submitted to the jury on the basis of the situation as disclosed by a light in operation, it will be considered on that basis here. Plaintiff did not, by submitting the case on this basis, concede that the light was burning or that it could take the place of specific warning lights or barriers. She merely consented to wage the fight upon defendant's chosen ground. As the jury found for her she cannot be penalized for so doing. It was perhaps a wise thing to do. Whether the light was burning or not would be a question for the jury to determine. That it was burning was asserted by defendant, and furthermore it was claimed that such light took the place of barriers or warning lights and that consequently their absence did not relieve plaintiff's husband of the charge of contributory negligence. If plaintiff had submitted her case upon the narrower ground that the light was not burning she ran the risk of having such action construed as an admission that if it was burning she had no case. She chose, therefore, to submit the issues upon the broader ground that the city was negligent and that plaintiff was entitled to recover even though the jury might find the light was burning.

Considered even on this basis, we think the facts presented a case for the jury. The deceased was unacquainted with the condition of the street. There were no barriers notifying him that any portion of the street was withdrawn from, or unfit for travel. When he reached the intersection at 19th and turned north, the east side of the street, which was the side for him, was in good condition. It was the side in front of him and before his vision. He had no occasion to notice the condition of the side west of the tracks at the time he turned north, even if its unfinished condition came closer to the arc light than the place of the accident, (concerning which the record is not clear and apparently is silent). It was not until it became necessary to turn out to the left to pass the vehicles standing on the east side and then to pass still further to the left to allow the street car to pass so as not to block traffic, that deceased came even to the east edge of the unfinished portion of the street. It was dark. The difference in the elevation of the two sides of the street would not be easily discernible even in the light of the electric arc lamp.

Taking these things into consideration, together with the lack of specific notice, such a light would give to a defect in the street (which a warning light or lights would supply), and the many conditions under which it is possible for the vision afforded by the arc light to be interfered with by shadows which deepen with the intensity of the light and increase in geometrical progression with the distance from intervening objects, the deceptive appearance a street has at a distance from the light, which appearance may vary in many ways, owing to the angle at which the light falls thereon and the light-reflecting or light-absorbing quality of the surface upon which the light falls, and the point from which it is viewed by the traveller—all these and many other conditions and circumstances possible to arise in any given case, make it uncertain that

in this case ordinary care on the part of one unacquainted with the condition of the street (as deceased was), would have disclosed that the street was unfit for travel and dangerous. This being so, it is not for this court to say, that the presence of the arc light at the intersection, even if burning and lighting up the situation as defendant claims, rendered plaintiff's husband guilty of contributory negligence or relieved the city of the charge of negligence in not providing warning lights or barriers. Deceased had a right to presume the street was safe, unless he had knowledge to the contrary or would have discovered it by the exercise of ordinary care. The presence of the arc light at the intersection cannot be taken as conclusive evidence that he was not in the exercise of such care. [Hitt v. Kansas City, 110 Mo. App. 713.] The question is one for the jury. [Combs v. Kirksville, 134 Mo. App. 645; Knight v. Kansas City, 138 Mo. App. 153; O'Donnell v. Hannibal, 144 Mo. App. 155.] In Ryan v. Kansas City, 232 Mo. 471, the Supreme Court held that the city, if shown to be negligent in the failure to have lights and barriers, could be held liable, but that if the place was otherwise so well lighted that plaintiff could have seen the defect in the exercise of ordinary care she could not recover. The questions of negligence and contributory negligence were there evidently treated as no more than questions for the jury. In the case at bar, however, defendant would have us treat them, at least the question of contributory negligence, as a matter of law for this court to determine.

The fact that Hinshaw, one of plaintiff's witnesses, testified on cross-examination that the arc light would show the condition the street was in, does not destroy plaintiff's case. He did not witness the accident and knew nothing of the surrounding circumstances at the time. He was acquainted with the street, and knew it was torn up. Such a light might disclose a *known* situation to him but would not necessarily do so to one

not acquainted therewith.   There was other evidence
that the light was not sufficient to disclose it.   The jury
had a right to say which it would believe and also to
put the estimate they saw proper upon Hinshaw's mere
opinion given in the abstract and without knowledge
of the surroundings attendant upon deceased at the
time he was hurt.

Error is claimed because evidence was admitted
that there were no lights or barriers on the street for
a long time prior to the night of the injury.   The only
theory on which such evidence could be erroneous or
prejudicial would be that the absence of such warnings
prior to that time would be considered as evidence that
they were absent on the night in question, and the
fact they were absent three months before would have
no tendency to prove they were absent on the night
in question.   But there was no evidence nor claim that
they were present on the night in question.   Smith's
testimony, upon which defendant relies to create an
issue on this point, does not say so.   It is true, that
where a city authorizes a contractor to do something
to the street which will render it unsafe and require
warning lights, no notice of the failure of the contrac-
tor to put lights there need be proved since the primary
duty is upon the city to keep its streets reasonably safe.
Without deciding whether or not cases might arise mak-
ing the continued or prior absence of lights or barriers
an issue proper to be proved, it can certainly be said
that if such evidence is admitted it is not error where
the absence of the lights on the night of the injury was
not disputed.   There was no evidence that they were
there on that night.   Witnesses for both plaintiff and
defendant said they were not, and defendant's theory
of the case upon which it was tried was that the arc
light dispensed with any others.   Instructions 16 and
18 on the part of defendant impliedly concede they
were absent.   In such state of the case, there being no
evidence showing the lights were there and none con-

troverting the charge that they were not there, the error, if any, was harmless. [Bailey v. Kansas City, 189 Mo. 503, 1. c. 511.]

As to the admission of evidence concerning the unfinished condition of the street at other places than at the point of the accident, evidence showing that it was unfinished and unfit for travel at and from the place of injury continuously on north to the next block would not be inadmissible. It would be admissible as bearing on the question as to the travel being confined to the east side of the street. In fact, it was contended by defendant that as the condition of the street was extensive and not a small unnoticeable depression therein, the condition was plainly observable to a man in the exercise of ordinary care. Again, it was permissible to show that no lights or barriers were at any point along the block where the street was unfinished because the presence of such at any point along there might serve to call attention to the condition of the street. In other words, while the street would have to be shown to be defective at the very point of injury, yet a warning light would not have to set precisely on that spot, but if there were such lights at other points adjacent thereto and on the unfinished portion so as to warn an ordinarily careful person that the street was not in condition for travel at the place of injury, the city would not be liable. So that, evidence that the west side of the street was torn up along the entire block was not prejudicial nor was its admission error. While the answer given by the witness Hinshaw, as to the condition of the street, was objected to on the ground that it was not confined to the place of the accident, yet plaintiff's counsel, complying with the objection made, immediately confined it to that place by asking, "Was that the condition down near Nineteenth street on that night?" To which the witness replied, "Yes sir." The original question as to the condition of the west side of Wyoming street "north from Nineteenth street"

which elicited the first answer of the witness Hinshaw above referred to, was not objected to on the ground now under consideration. And the answer given to it was merely indefinite as to place, which the next question corrected by placing it at the scene of the accident.

As to the witness Cottingham, the record shows he was being asked with reference to the place where and the time when "Mr. Burton got killed down there at Nineteenth and Wyoming?" He was then asked to "state if you know anything about the street being torn up *there* on the west side of Wyoming street north of Nineteenth?" He replied, "Well, it was torn up for repaving from Eighteenth north past Seventeenth." No objection was made to this answer. Plaintiff's counsel was not asking about the street north of Eighteenth but about the part north of Nineteenth, there where Burton got killed, and the next question again directed the witness' attention to Nineteenth. And the witness' answer, as finally obtained, was that the street was not torn up right at Nineteenth but was north of it. Later, to a question as to "whether any lights, barriers or barricades were put out *there* at any time," an objection was made first as to such things at any other time and then next as to any other place, but none as to the street being torn up in blocks north of the block in question. The record shows that plaintiff's counsel was not inquiring as to blocks thus far from the scene of the trouble, and any evidence of the condition of the streets as to any block other than the one in question came from the witness and no objection thereto was made nor request to have it stricken out. Clearly the place inquired about was there where Mr. Burton got killed north of Nineteenth. And, as stated before, it was not error to show the condition of the street along that entire block.

It is urged that plaintiff's instruction was erroneous in that it assumed that the depression in the

street was neither guarded nor lighted, and that the question really submitted was not whether the street was guarded or lighted, but being unguarded and unlighted did such fact render it dangerous? The instruction is not open to the objection made against it, and the point is without merit. Plaintiff's claim was that the street was dangerous and unsafe because of the depression and the absence of lights and barriers. The instruction did not assume such things but expressly required the jury to find that the street was dangerous and unsafe in those respects before a verdict could be returned in favor of plaintiff. The absence of warning lights or barriers was not controverted as hereinbefore stated, so that if the instruction had been open to the charge that it assumed their absence, it would not have been reversible error, since it is not error to assume as a fact a thing which both sides treat as true.

Complaint is made of the conduct of plaintiff's counsel in the closing argument. Defendant was represented at the trial by several counsel. Part of them were from the city counsellor's office and appeared in their official capacities as assistant city counsellors. But among them was counsel for a surety company on a surety bond given by the contractor to protect the city against liability on account of doing the work. He was there in the interest of that company and not in behalf of the city. In the argument of counsel for the city the jury were told that, "We have no interest in fixing up testimony in this case. All we are interested in is to present the actual facts to the jury. *We are disinterested public servants of Kansas City.*"

In replying to this, plaintiff's counsel said, "It is hard to tell, gentlemen of the jury, the degree of interest that men have in the defense or in the prosecution of law suits, and it ill becomes these gentlemen to say they are the disinterested public servants of Kansas City. I do not know whether they are or not. There is no evidence here that they are; whether they

are private hired attorneys, or whether they are the public counsellors of Kansas City, you have no evidence in this case to show." Here an objection was interposed and a request made to discharge the jury. The court denied the request, but told the jury the matter was absolutely outside of and beyond the issues in the case. Plaintiff's counsel then continued, "I criticized the gentleman for standing up here and talking to you about his lack of interest in this case. That is just criticism. There is no evidence of whether he is interested or not." Objection was made to this and the court was again requested to discharge the jury. The court replied: "That will be sustained, gentlemen of the jury, you will disregard all remarks on either side concerning the attorneys. Their rights are not involved in this case at all."

The statements made by plaintiff's counsel did not tell the jury that a surety company was interested in the defense of the case. They merely told the jury that there was no evidence in the case to show whether defendant's counsel were *disinterested* public servants or not. If this was likely to cause the jury to suspect that other interests were back of the defense, it was not reversible error, because it was invited by the argument made by defendant's counsel that "We are *disinterested* public servants of Kansas City."

Other alleged misconduct in argument on the part of plaintiff's counsel is complained of wherein he asked the jury to assess the full amount of damages allowed by the statute, and not to put the life of deceased at a discount nor to measure plaintiff's damages solely upon the basis of the money he earned per week, but to consider that because of her husband's death plaintiff was left to support the children the evidence showed she had.

The jury paid no heed to the request to assess the full amount allowed by the statute as shown by their verdict. [Jones v. Kansas City, etc. R. Co., 178 Mo.

l. c. 554.] The testimony as to the number of the children and their ages was not objected to, but if it had been, it would have been admissible. [Boyd v. Railroad, 236 Mo. 54, l. c. 88.] The burden of educating the minor children, alone and without the help of the deceased, was cast upon the plaintiff by the negligence of the defendant. This was one of the elements of her damage which the jury might consider in determining the amount of the verdict. [Voelker v. Hill-Omeara Construction Co., 153 Mo. App. 1, l. c. 12; Stoher v. St. Louis Iron Mountain and Southern R. Co., 91 Mo. 509, l. c. 518; Fisher v. Central Lead Co., 156 Mo. 479; Tethrow v. Railroad, 98 Mo. 74; Brenkman v. Gottenstroeter, 153 Mo. App. 351, l. c. 355.]

The argument was not an appeal to the sympathies of the jury nor was it likely to stir up their prejudices. It merely called attention without repetition, to the elements of plaintiff's damage which the law says the jury may consider. The verdict was not excessive. [Barth v. Kansas City Elevated Ry. Co., 142 Mo. 535; Geissman v. Missouri-Edison Electric Co., 173 Mo. 654, l. c. 680; Lee v. Mo. Pac. Ry., 195 Mo. 400, l. c. 428-9; Darks v. Grocer Co., 146 Mo. App. 246.]

The record does not present reversible error, and the judgment cannot be disturbed. It is therefore affirmed. The other judges concur.