A. H. KELLY and ELIZABETH KELLY, Appellants, v. THE CITY OF HIGGINSVILLE, Respondent.

Kansas City Court of Appeals, December 21, 1914.

1. **NEGLIGENCE: Electricity: Excessive Judgment.** The plaintiffs sued the defendant city to recover for the negligent death of their minor son seventeen and one-half years old. The son was walking along the street and came in contract with some guy wires attached to an electric light pole, which had become charged by the negligent maintenance of some high powered guy wires also attached to the pole. The shock of the contact killed the son and parents obtained judgment for $2500. *Held*, that the measure of the parents' damage for the loss of a minor child is the pecuniary value to the parents of the child's services during his minority and the burial and other expenses incurred by his death, less, the expenses to the parents of his support and maintenance during that time. No damage may be allowed in way of solatium for mental anguish or distress for the death or loss of society of the child. Therefore $800 should be remitted.

2. ————: ————: ————. Where it is manifest that a verdict is excessive, the court is remiss in its duty if it does not, upon motion, set it aside and grant a new trial, and this duty rests almost entirely within the province of the trial court and this court will not interfere with the exercise of such discretion, unless it appears to have been unreasonably or arbitrarily exercised.

3. ————: ————. The extremely dangerous and subtle nature of electricity, imposes upon those who use the public streets of a city in its transmission, the duty of exercising the highest degree of care to protect persons rightfully using the streets against injury caused by the escape of the fluid from its prescribed course and where a pedestrian properly using the street, and in the exercise of reasonable care, is injured by coming in contact with an escaping current, a prima-facie case of negligence on the part of the owner of the wire from which the current escaped is made out, and the burden devolves upon such owner of proving to the satisfaction of the triers of fact that the escape of the force occurred, despite the exercise of the highest care, on the part of its custodian, to restrain it.

Appeal from Lafayette Circuit Court.—*Hon. Samuel L. Davis,* Judge.

REVERSED AND REMANDED (*conditionally*).

*Ault & Ault* for appellants.

*J. P. Chinn, G. W. Stegen, Charles Lyons* for respondent.

JOHNSON, J.—Plaintiffs, who are husband and wife, sued to recover damages for the death of their minor unmarried son which they charge was caused by negligence of defendant. The answer is a general denial and a plea of contributory negligence. A verdict was returned for plaintiffs in the sum of twenty-five hundred dollars, but afterward defendant's motion for a new trial, which alleged a number of grounds, was sustained on the sole ground of an excessive verdict. Plaintiffs did not offer to enter a remittitur and the court did not indicate its views concerning the extent of the excessiveness. Plaintiff appealed.

Defendant insists that the court did not err in granting a new trial on the ground stated in the order but did err in not sustaining the motion upon other grounds, the principal one of which was alleged error in overruling defendant's request for a directed verdict.

Young Kelly was seventeen and one-half years old at the time of his death which occurred in the night of July 7, 1909, on one of the public streets of Higginsville. He was walking north on the sidewalk on the east side of Russell street and had just passed over the crossing of Ambrose street when suddenly he sank down with a scream, attempted unsuccessfully to rise, struggled a brief moment and then expired. He was a strong, vigorous boy, in the best of health and a *post mortem* examination failed to reveal any weakness of

the heart or other symptoms of disease. The doctors who made the examination testified to the absence of any burns or other marks of violence on the body, but witnesses introduced by plaintiffs testified to a mark resembling a burn across the inside of the fingers of the right hand. The electric lighting plant, which furnished electricity for both public and private consumption, was owned and operated by defendant, and one ·of its high power lines ran north and south along the curb line on the west side of Russell street. One of the poles of this line was at the southwest corner of the intersection of Ambrose street. It carried three wires attached to a cross-arm in the usual manner. Heavy currents were transmitted by each of these wires which were insulated. There is evidence tending to show that the insulation had been allowed to become and remain in a worn and defective condition and that on account of the cross-arm having become defectively fastened to the pole the wires were brought into contact with, or close proximity to, guy wires attached to the top of the pole, permitting the escape of electricity from its appointed channels. A span wire attached to the top of the pole crossed diagonally over the street intersection to the top of a guy pole at the northeast corner. The guy pole which was set at the corner just outside the west line of the sidewalk was held in place by guy wires one of which extended from the top of that pole downward to a point nine feet north of the pole and about twenty inches west of the sidewalk, where it was fastened to an iron rod which in turn was fastened to a "dead man" buried in the ground. Neither this guy wire nor the span wire was intended to be charged with electricity but owing to the defects at the top of the pole at the southwest corner, electricity was escaping to the guy wires attached to the top of that pole and was conducted by the span wire to the top of the guy pole on the northeast corner from

which it traveled over the guy wire and iron rod to the ground.

The day and evening had been rainy and sputterings of electric fire had been noticed at the ring on the top of the iron rod to which the guy wire was attached. The ring had grown rusty and as rust is an impediment to the free passage of electric currents, the flashes were due to such impediment which hampered, but did not destroy, the circuit. The evidence of plaintiffs' tends to show that the defects at the top of the line pole we have noted had been in existence long enough for defendant in the exercise of proper care to. have discovered and repaired them. On the other hand the evidence of defendant is to the effect that tests made that afternoon showed the absence of a short circuit on that line and that that the flow of electricity over the span and guy wires necessarily began after that test. Young Kelly was stricken at a point about midway between the guy pole and the point where the guy rod entered the ground. When his struggles ended his body was in the gutter two or three feet west of a line drawn from the guy pole to the iron rod. Evidently when stricken he was walking close to the outer edge of the sidewalk and it is the contention of plaintiffs that he must have brushed against or in some way, touched, the guy wire and received from it a lethal shock.

In granting a new trial on the sole ground that the verdict was excessive the court, in effect, overruled the other grounds assigned in the motion. Among such other grounds it was alleged that plaintiffs had failed to make a case to go to the jury, that the verdict was against the weight of the evidence and that it was the result of passion or prejudice in the jury. The court held that the evidence of plaintiffs substantially supported the pleaded cause that the verdict was sustained by the weight of the evidence, taken as a whole, that it was not the product of passion or preju-

dice, and that the excessive assessment of damages was an honest over-estimate of the recoverable damages.

We begin our examination of these rulings, especially of the one on which the new trial was ordered, with the presumption that they were proper expressions of the law of the case, but such presumption would not preclude us, as an appellate tribunal, from setting aside the order granting a new trial if we find that it was an abuse of sound judicial discretion. "Where it is manifest that a verdict is excessive, the court is remiss in its duty if it does not, upon motion, set it aside and grant a new trial and this duty rests almost entirely within the province of the trial court and this (The Supreme) Court will not interfere with the exercise of such discretion, unless it appears to have been unreasonably or arbitrarily exercised." [McCloskey v. Publishing Co., 163 Mo. 22; Kuenzel v. Stevens, 155 Mo. 280; Bank v. Wood, 124 Mo. 72; Rodan v. Transit Co., 2027 Mo. 392.] Nor does the presumption of right acting in the trial court prevent us from giving full and unhampered consideration to grounds alleged in the motion for a new trial which were rejected by the trial court and are duly presented by respondent. The rule in such cases is that "where the party in whose favor the order for a new trial goes, can make it clear from the record brought up (on his adversary's appeal) that that order was right, for reasons (assigned in his motion) other than those on which the trial judge based the order, he may secure an affirmance on the general principle that an appellate court should always sustain a correct result though it may have been brought about by an erroneous process of reasoning." [Ittner v. Hughes, 133 Mo. 679; Thiele v. Railway, 140 Mo. 319.] Counsel for defendant argue that under these rules the judgment granting a new trial should be affirmed on the ground of error in the refusal of the trial court to direct a verdict for de-

fendant and as this is the most important issue in the case and must be decided in any event, we shall consider it first.

It is contended that there is no substantial evidence of negligence on the part of defendant. It is true there was no witness who contradicted the testimony of the employees of defendant in charge of defendant's power house that a test was made with a testing instrument on the afternoon of the day of the injury and the line on Russell street was found to be free from any leakage of electricity, but such testimony by no means is conclusive proof that reasonable care, which, in the business of transmitting electricity over the public streets of a city, means the highest care, had been exercised by defendant's employees to prevent the diversion of a deadly current from its proper course to the uninsulated guy wire which carried it into dangerous proximity to pedestrians rightfully using a public street crossing and sidewalk. The triers of fact were not bound to believe this testimony. The credibility of the witnesses who gave it, as well as the reasonableness of the testimony under all the facts and circumstances in evidence, were issues of fact for the jury to determine, notwithstanding the absence of direct contradictory testimony. But there is ample room in the record for the acceptance of this evidence together with a reasonable inference that the escape of the current subsequent to the test was the direct result of negligence.

The law, in view of the extremely dangerous and subtle nature of electricity, imposes upon those who use the public streets of a city in its transmission, the duty of exercising the highest degree of care to protect persons rightfully using the streets against injury caused by the escape of the fluid from its prescribed course and where a pedestrian properly using the street, and in the exercise of reasonable care, is injured by coming into contact with an escaping current,

a prima-facie case of negligence on the part of the owner of the wire from which the current escaped is made out, and the burden devolves upon such owner of proving to the satisfaction of the triers of fact that the escape of the force occurred, despite the exercise of the highest care, on the part of its custodian, to restrain it. [Hoover v. Railway, 159 Mo. App. 416; Gannon v. Gas Light Co., 145 Mo. l. c. 511; Geismann v. Electric Co., 173 Mo. 654; Winkelman v. Light Co., 110 Mo. 184; Heiberger v. Telephone Co., 133 Mo. App. 452.]

The defensive proof fails entirely to explain away the negligence which the evidence of plaintiffs shows was the cause of the escape of the current from its proper course to the uninsulated guy wire. A defective condition at the top of the pole carrying the service wires and which consisted of the broken and loosened cross-arm which brought those wires close to others wrapped around the top of the pole and of an obvious defect in the insulation of the service wires, had proclaimed for sometime the likelihood of an escape of electricity to the span and guy wires on the first windy, rainy day. The condition, according to the evidence of plaintiffs, was obvious and that it was highly dangerous goes without saying. It had existed long enough for defendant to have known of it and it was negligence in the most culpable degree to permit a condition to continue that sooner or later would result in the diversion of a powerful current of electricity to a place where it would be a menace to the safety of persons rightfully using the street. The demands of reasonable care will not tolerate the thought that defendant could wait before acting, until its tests showed that the thing which the defect foretold would happen had become an accomplished fact. Plaintiffs' evidence affords ample proof of the charge of negligence.

It is argued by defendant that no causal relation between such negligence and the death of young Kelly is shown. The burden is upon plaintiffs not only to establish by proof the existence of the pleaded charge of negligence but also that such negligence was the proximate cause of their son's death. [Byerly v. Light Co., 130 Mo. App. 592.] The street lights were burning and the young man was observed by witnesses who were across the street. He approached Ambrose street walking along the sidewalk whistling and carrying a cane or stick which he rattled against the palings of a fence along the property line. He passed over the crossing of Ambrose street to the sidewalk which continued on the east side of Russell street and took two or three steps to the place where he fell and almost immediately expired. Of course no one intentionally observed him before his fall and death scream proclaimed that he had been mortally stricken. No one saw him touch the guy wire before his fall. That wire was at his left and manifestly, since he was walking withou', pausing or turning towards the left, he did not grasp the wire with his right hand. He may have touched it with a swing of the stick or brushed it with his left shoulder, or, at, least, passed so close to it that the current, which was meeting with opposition at the juncture of the wire with the rusty ring at the end of the grounded iron rod, jumped the intervening space to the better conductor offered by the passing body. There are other ways in which it may be reasonably inferred that he was brought into the short circuit and the fact that no burn or external mark of the contact was left upon his body does not compel the conclusion that he was not attacked by the escaping force. We held in Byerly v. Light Co., supra, that the absence of such a mark, though against the theory of death by an electric shock was not conclusive. The vagaries of electricity and of its manifestations are well known. People have been killed by

lightning without any mark being left upon the body. As is well said by the superintendent of defendant's lightning business (who appears to be well informed in the science of electricity), the passage through the body of a lethal current causes no burn and leaves no external mark. Burns are caused on the breaking of the contact by the intensely brilliant arc which, itself a species of combustion, temporarily bridges the widening space. If the arc comes into contact with dry skin a burn will ensue, but if the body at the point of contact is protected by damp clothing, which is a good conductor of electricity, in all probability no mark will be left on the body. With evidence tending to show that the boy's clothing and shoes were damp, and that he was in a position where the current could attack his body at a place covered by his clothes, there is nothing in the fact that no external mark was left upon him to militate against the inference that he died from a shock of electricity received from the uninsulated guy wire. The lurking deadly foe was there within striking distance, the manner of death which overcame the boy at its only place of attack was such as it could and would deal, there was no other ascertained cause, and to infer that death resulted to a strong, healthy boy, from some other cause, would be to indulge in the merest speculation. We have no right to resort to conjecture to aid either party. The evidence of plaintiffs strongly tends to show that the pleaded negligence of defendant was the proximate cause.

The argument that the boy was guilty of contributory negligence as a matter of law is so clearly untenable that we shall not discuss it. The most that may be said of his conduct in favor of defendant's charge of contributory negligence is that it presented an issue of fact for the jury.

The court did not err in overruling defendant's request for a peremptory instruction.

Passing to the question of excessive verdict, the evidence shows that plaintiffs were in humble circumstances, but were able to send the boy to school and were intending to send him another year. It was vacation time and he had been working in the harvest fields for $2 per day. His funeral expenses amounting to $200 were allowed in the verdict, leaving an assessment of $2300 for the pecuniary loss plaintiffs sustained in consequence of his death. The measure of a parent's damage for the loss of a minor child is the pecuniary value to the parent of the child's services during his minority and the burial and other expenses incurred by his death, less the expense to the parents of his support and maintenance during that time. No damages may be allowed by way of solatium for mental anguish or distress for the death or loss of society of the child. [Leahy v. Davis, 121 Mo. 227; Hickman v. Railway, 22 Mo. App. 344; Marshall v. Mining Co., 119 Mo. App. 270.]

We are justified in inferring that the boy's earning capacity would constantly increase and that he would become more and more valuable to his parents as a pecuniary asset and, further, it is proper to take into consideration the value of the services which a strong, bright well-reared boy will render his parents apart from wages he may earn in the service of strangers and turn over to them. But after making all such allowances it would be difficult to conceive that the net pecuniary value of the minor's services for the three and one-half years of his minority could have exceeded $1500. We, therefore, cannot say that the trial judge abused his discretion in granting a new trial. Indeed, it was his clear duty to set aside the verdict on that ground and as plaintiffs did not offer to remit he could not do otherwise. The objection sustained by the court went to the amount and not to the integrity of the verdict. In such cases appellate courts have always exercised the right to avoid the necessity

Kelly v. Higginsville.

of a retrial by ordering a remittitur that will bring the recovery within proper bounds. [Ellis v. Construction Co., 60 Mo. App. 69; Ray v. Thompson, 29 Mo. App. 431; Hoyt v. Reed, 16 Mo. 294; Buse v. Russell, 86 Mo. 209; Chitty v. Company, 148 Mo. l. c. 79.] As is said in Tilford v. Ramsey, 43 Mo. 410: "It is admitted that the judgment rendered was for too much, and the plaintiff has filed below, though too late, a remitter of the excess. Being filed out of time we will treat it as filed in this court. When a judgment is sought to be set aside or reversed for this reason only, justice always demands that any court that has power to render judgment should accept the remitter and enter judgment for the true amount. As the plaintiff was at fault in this matter below, it is right that he should pay the costs occasioned by his negligence."

Plaintiffs now offer to file a remittitur for the amount we may hold the verdict to be excessive. We think that a remittitur of $800 and all accrued interest will reduce the verdict to the maximum limit of reasonableness.

Other points argued by defendant in support of a retrial of the case have been examined and are found to be without merit. The case was fairly tried and the verdict was for the right party. On condition that within ten days of the announcement of this opinion a remittitur be filed as suggested, the judgment granting a new trial will be reversed and the cause remanded with directions to enter judgment for the amount of the verdict less the sum remitted; otherwise the judgment granting a new trial will stand affirmed.

It is so ordered. All concur.