WILLIAM E. LOCKHART v. KANSAS CITY, MISSOURI, Appellant.—No. 38614.—175 S. W. (2d) 814.

Division One, December 6, 1943.

*William E. Kemp,* City Counselor, and *Arthur R. Wolfe,* Assistant City Counselor, for appellant.

1220

*Homer A. Cope, Cope & Hadsell*, and *Walter A Raymond* for respondent.

HYDE, J.—This is an action for $50,000.00 damages for personal injuries and disease, claimed to have been caused by conditions under which plaintiff worked as janitor in the chemical building at defendant's water purification plant. There was a jury verdict for defendant, but the court sustained plaintiff's motion for new trial on the ground of error in refusing five instructions requested by plaintiff. Defendant has appealed.

Plaintiff alleged that substances prepared and used by defendant caused deleterious and poisonous dust in the building in which plaintiff worked so that it was inhaled by him in dangerous quantities and caused him permanent incapacitating injuries and disease. Plaintiff charged both common law negligence and violation of the health and safety statutes contained in Art. 5 of Chap. 68, R. S. 1939, Secs. 10181-10225, Mo. R. S. Ann. Defendant contends that these statutes have no application to a municipality. The trial court took this view, refusing plaintiff's instructions 2, 3, 4, 5 and 6 based on violation of Secs. 10223, 10192, 10214, and 10211. (All section references hereinafter made are to R. S. 1939 and Mo. R. S. Ann. unless otherwise specified.) On motion for new trial, the court changed its views and decided that a city must comply with these statutes in operating its waterworks. Therefore, the applicability of these statutes to municipal corporations is the question to be decided. It is not contended that plaintiff failed to make a jury case under them if they are applicable.

Cities are authorized to erect, maintain and operate waterworks, and also electric light plants and other plants specified by Sec. 7786. (Adopted in 1891, Laws 1891, p. 67.) It has long been settled that such plants, when operated for the purpose of supplying

such services to individuals, are operated by a city in its private corporate capacity. [Lober v. Kansas City, 339 Mo. 1087, 100 S. W. (2d) 267, 74 S. W. (2d) 815; Thompson v. City of Lamar, 322 Mo. 514, 17 S. W. (2d) 960; Riley v. City of Independence, 258 Mo. 671, 167 S. W. 1022.] An attempt to exempt certain cities from liability for negligence in the operation of waterworks (Sec. 21 of Act of 1905, Laws 1905, p. 93, Sec. 9119, R. S. 1919) was declared invalid (Vice v. City of Kirksville, 280 Mo. 348, 217 S. W. 77) and later repealed. (Laws 1931, p. 266.) In the Riley case, this court said: "Cities undertaking to run the lighting business must assume the same responsibilities as private persons and corporations running like plants." [43 C. J. 1177-1182, Secs. 1948-1951; 18 Am. Jur. 439, Sec. 43; 38 Am. Jur. 307, Sec. 609; 27 R. C. L. 1401, Sec. 19.] As also held in the Riley case, this includes liability to a city [816] employee in such plant for injury caused by negligence. [43 C. J. 934, Sec. 1713; 38 Am. Jur. 287, Sec. 591.] Defendant does not contend otherwise as to common law negligence but says our statutory provisions requiring certain methods, devices and appliances for the health and safety of employees do not apply to municipal corporations.

▆ Defendant relies mainly on Webster Groves v. Smith, 340 Mo. 798, 102 S. W. (2d) 618; Public Service Commission of Mo. v. City of Kirkwood, 319 Mo. 562, 4 S. W. (2d) 773; and City of Columbia v. Public Service Commission, 329 Mo. 38, 43 S. W. (2d) 813; saying, as we did in the Webster Groves case, that "in definition and legal classification and terminology a well-settled distinction exists, and is recognized generally, between a 'corporation' and a 'municipal corporation'"; that "in common parlance, towns, cities and other municipal organizations are not known as corporations"; and that "neither by the language of the Constitution nor statutes is the term 'corporation' so used as to apply to and include a municipality or municipal corporation and where a city or town is referred to, in the sense of being a corporate entity, the term 'municipal corporation' is used." Defendant, therefore, contends that the statutory definition of employer, namely: "in this article, unless the context otherwise requires, 'employer' includes persons, partnerships and corporations", (Sec. 10225) cannot be construed to include a municipal corporation as being an employer.

However, the Webster Groves case involved the construction of a taxing statute, the first sales tax act. [Laws Mo. Extra Session 1933-34, p. 155.] We pointed out that "the provision for verification of the return to be made to the state auditor requires that it 'be verified by the oath of the taxpayer, if made by an individual, or by the oath of the President, Vice-President, Secretary, or Treasurer of a corporation if made on behalf of a corporation"; and that while these are "usual officers of private corporations, they are not, except treasurer, officers of a municipality." We ruled: "looking to the context of the

act as a whole, we find no language or provisions therein from which an implication necessarily arises that it was the legislative intent to include a municipal corporation within the act.'' After we so ruled the General Assembly, at its next session, did make the sales tax specifically applicable to public utility services of municipal corporations. [Laws 1935, p. 411; Laws 1937, p. 552; Laws 1939, p. 885; Sec. 11407 (R. S. 1939) Mo. R. S. Ann.] The Kirkwood and Columbia cases involved the jurisdiction of Public Service Commission to regulate rates and service. In the Columbia case, while the terms of the act were broad enough to authorize regulation of light plants operated by cities, the basis of the decision was the failure of the title to clearly express such purpose. [Sec. 28, Art. 4, Const.] In the Kirkwood case, we held that the previous statute, authorizing cities operating waterworks to supply water to cities or persons beyond city limits, was not repealed by the Public Service Commission Act so that a certificate of convenience and necessity could be required for the city to continue to furnish such service.

The provisions of Article 5, Chap. 68, claimed to be applicable here (Secs. 10211-10225) were a part of the Act of 1913 (Laws 1913, p. 402) except Sec. 10192 which came from the Act of 1891. (Laws 1891, p. 159.) Sec. 1 of this Act (Sec. 10211) requires: ''That *every employer of labor in this state* engaged in carrying on any work, trade or process which may produce any illness or disease peculiar to the work or process carried on, . . . shall for the protection of all employees engaged in such work, trade or process, adopt and provide approved and effective devices, means or methods for the prevention of such industrial or occupational diseases as are incident to such work, trade or process.'' Sec. 2 of this Act (Sec. 10212) provides that ''the carrying on of any process, or manufacture, or labor in this state'', in which certain specifically named substances are used, including also generally ''any poisonous chemicals, minerals, acids, fumes, vapors, gasses'' are ''declared to be especially dangerous to the health of the employees''. Sec. 4 (Sec. 10214) provides that ''every employer engaged in carrying on any process or manufacture referred to in section 2 . . . shall, as often as once every calendar month, cause all employees who come into direct contact with the poisonous agencies or injurious processes referred to in section 2 . . . to be examined by a competent licensed and reputable physician''. Sec. 13 (Sec. 10223) provides that the ''employer shall post in a conspicuous place in every room or apartment in which any such work or process is carried on, appropriate [817] notices of the known dangers to the health of any such employees arising from such work or process, and simple instructions as to any known means of avoiding, so far as possible, the injurious consequences thereof . . .''

Thus it is apparent that the basis and purpose of this act was to protect the health of persons employed in processes likely to cause

occupational diseases by requiring certain safeguards and preventive measures for their protection. This act was a recognition by the Legislature that many chemical processes of modern industry were likely to cause occupational diseases unless such preventive measures were taken and that common law standards of care were inadequate to meet the situation. Moreover, the purpose of these provisions concerning such diseases was not merely a matter of providing recompense by way of damages to individuals injured thereby; the importance to the general public welfare of preventing employees from contracting such diseases was at least as great a factor. Certainly such diseases would be just as harmful, both to the injured individual and the public, regardless of whether caused by conditions existing in a plant operated by a private or a municipal employer. This was not an act to classify employers, but was instead one which set up new standards of care for carrying on certain essential industrial and manufacturing processes. The basis of its application was dependent upon the type of process in which the employee was engaged rather than who or what the employer was. The definition in Sec. 10225 must be read in this light and construed in connection with Sec. 10211, saying "every employer of labor in this state" carrying on processes subjecting the employees to danger of occupational disease shall adopt certain means of protection. So construed does not Sec. 10225 merely mean that no employer is excluded from its requirements by reason of being an individual, partnership or corporation? That is: except where the context of some section of the act provides for something that obviously could not apply to an employer of one of these classifications; for example, a corporation could not be committed to jail for failure to pay a fine. (Sec. 10224). In short, is it not the existence of the relation of employer and employee (master and servant) that is controlling?

The view that a municipality's business operations, in its private corporate capacity, does come under such employer's liability acts seems to be almost universally accepted. In Coughlan v. City of Cambridge (Mass.), 44 N. E. 218, the Employer's Liability Act of 1887 ("an act to extend and regulate the liability of employers to make compensation for personal injuries suffered by employees in their service", which used the terms "employer" and "employee" without definition and covered injuries sustained "by reason of any defect in the condition of the ways, works or machinery connected with or used in the business of the employer") was held applicable to the city temporarily operating a railroad in connection with improving its waterworks. The court said: "The improvement which the defendant was engaged in making was for its own benefit and on its own premises. And when the relation of master and servant exists between employer and employee, as it did here between the plaintiff and defendant and others engaged in the work, we see no reason why St. 1887, c. 270, should not apply to a city or town."

The same view was taken in Josupeet v. City of Niagara Falls, 127 N. Y. S. 527 where a city employee engaged in street repair work was injured by the fall of an overhanging bank after use of dynamite. The court said: "We can see no reason why a municipality should not be held to the same care for the safety of its employees, as an individual, nor why all the provisions of the employer's liability act (Consol. Laws, c. 31, Secs. 200-204) should not apply to cities equally as to private corporations or individuals—employers of labor. The act makes no exceptions in favor of the municipalities, and considerations of public policy require none should be made by judicial construction or decision." The Oregon Supreme Court followed this ruling of the Josupeet case, quoting and adopting this language, in Mackay v. Commission of Port of Toledo, 152 Pac. 250, citing also 5 Labatt's Master and Servant (2d Ed.) 5142, Sec. 1665. The Supreme Court of Ohio on similar grounds held that the word "employer", in an enabling section of the constitution of that state, included both private and municipal corporations. The court said: ". . . plain logic and common humanity would seem to justify no lesser degree of safety for employees of municipalities than for those employed in private industry. If such a distinction is to be made, it must be accomplished by action on the part of the Legislature rather than on the part of the court." [State ex rel. Post [818] v. Industrial Commission, 127 Ohio St. 187, 187 N. E. 719.]

The Ohio court further said: "The respondent urges also that sections 1027 and 1028, General Code, are penal in their nature and cannot be considered applicable to municipal corporations, because municipalities cannot be prosecuted and punished. Even if this were a correct statement of the law, it would not necessarily be conclusive. However, in 28 Ohio Jurisprudence, 1052, appears the statement that 'a municipal corporation may, in a proper case, be subjected to a criminal prosecution.' To the same effect is the following language in 19 Ruling Case Law, 1048: 'It is held by the great weight of authority that a municipal corporation may, in a proper case, be subjected to a criminal prosecution. Thus when it violates a penal statute in regard to the employment of labor, it may be indicted and fined in the same manner as any other employer.' " [See also People v. Chicago, 256 Ill. 558, 100 N. E. 194, 43 L. R. A. (N. S.) 954; Ann. cases 1913E, 305, Anno. 308; 31 Am. Jur. 1110, Sec. 562; 37 Am. Jur. 753, Sec. 140; George v. City of Youngstown, 139 Ohio St. 591, 41 N. E. (2d) 567.]

In Sumid v. City of Prescott (Ariz.), 230 Pac. 1103, the court held applicable, to a city waterworks employee, an employers' liability act which applied to "any employer, whether individual, association or corporation" engaged in certain specified hazardous work. The court said: "To construe the statutory action as unavailable to an employee of a municipality engaged in private enterprise would be a denial of

a right analogous to the common-law right of recovery for negligence. Under the common law a municipal corporation exercising proprietary or business powers was regarded quo ad hoc a private corporation, and was liable to the same extent and on the same principles as a private corporation. . . . The construction contended for is not in harmony with the spirit or purpose of the law. It would be establishing a rule more restrictive than the common-law rule in analogous cases, and it would discriminate between employers of labor in the same occupations under the same or similar circumstances.''

The Arizona Supreme Court relied on cases under the Wrongful Death Act. There are two lines of conflicting authority as to whether a municipality is a ''corporation'' or ''person'' within the meaning of a death statute [Annotation 115 A. L. R. 1287; 39 Am. Jur. 284, Sec. 589.] In Murphy v. Mercer County, 57 N. J. L. 245, 31 Atl. 229, holding a municipal corporation liable, it was said that the act ''being thus remedial in its character, and subject to liberal extension in construction, it would be naturally applicable to that class of persons, and those classes of corporations, upon whom a liability for injuries, when death does not ensue, caused by neglect, is imposed''; and that ''there is nothing in the language or spirit of the statute which narrows or restricts this general meaning, and confines it to any one class of corporations.'' Likewise ruling that a municipal corporation was liable under the act in Merkle v. Bennington, 58 Mich. 156, 24 N. W. 776, COOLEY, C. J. said: ''It is general, and applies 'whenever' a death has been caused under circumstances which would have given a cause of action had the person survived.'' Cases in some states which first reached a different result really involved governmental functions. In Missouri, the death act has long been applied to cities, acting in private corporate capacity, apparently without any such question being raised. [See Franke v. City of St. Louis, 110 Mo. 516, 19 S. W. 938; Capp v. City of St. Louis, 251 Mo. 345, 158 S. W. 616; Bagley v. City of St. Louis, 268 Mo. 259, 186 S. W. 966; Davoren v. Kansas City, 308 Mo. 513, 273 S. W. 401; Church v. Kansas City (Mo. App.), 280 S. W. 1053; Jamison v. Kansas City, 223 Mo. App. 684, 17 S. W. (2d) 621; Jensen v. Kansas City, 181 Mo. App. 359, 168 S. W. 827; Burton v. Kansas City, 181 Mo. App. 427, 168 S. W. 889; Privette v. City of West Plains (Mo. App.), 93 S. W. (2d) 251; Pulsifer v. City of Albany, 226 Mo. App. 529, 47 S. W. (2d) 233; Pyle v. University City (Mo. App.), 279 S. W. 217; Jermain v. City of Milan, 220 Mo. App. 760, 277 S. W. 67; Pyle v. City of Columbia (Mo. App.), 263 S. W. 474; Kelly v. City of Higginsville, 185 Mo. App. 55, 171· S. W. 966; Ray v. City of Poplar Bluff, 70 Mo. App. 252.]

In view of the plain purpose of the occupational disease act to protect the health of employees engaged in the dangerous processes specified in the act, our conclusion must be that it establishes stand-

ards of care for such work to take the place of inadequate common law standards of care; that such standards must be observed by "every employer . . . in this state [819] engaged in carrying on any work" to which this act applies; and that no employer is excluded from it who is liable for failure to observe common law standards of care. Defendant also contends that the act is invalid as to it (under Sec. 28, Art. 4, Const.) because its title did not embrace municipal corporations. The title was "An Act to promote the public health by protecting certain employees in this state from the dangers of occupational or industrial diseases, providing penalties, and providing for the enforcement thereof." This title shows that the Legislative intent was to cover all those employees who were subjected to the dangers of occupational disease by the processes specified in the act. The emphasis is on employees' protection, not on employers' status. It is broad enough to cover "every employer of labor in this state" using such processes. We, therefore, hold that a municipality engaged in furnishing public utility services in its private corporate capacity is subject to the statutes relied on by plaintiff herein, and that plaintiff was entitled to instructions based on the standards therein provided. This does not mean that we approve all of these instructions in the form offered. [For a discussion of requirements for such instructions see Smith v. Harbison-Walker Refractories Co., 340 Mo. 389, 100 S. W. (2d) 909.] The order granting a new trial on this ground should be affirmed.

Affirmed and remanded. All concur.