KOCH BROS. BAG COMPANY, a Corporation, Respondent,

v.

KANSAS CITY, Missouri, a Municipal Corporation, Appellant.

No. 46474.

Supreme Court of Missouri,

Division No. 1.

July 14, 1958.

Motion for Rehearing or to Transfer to Court en Banc Denied Sept. 8, 1958.

Benj. M. Powers, City Counselor, John J. Cosgrove, Associate City Counselor, Robert A. Meyers, Asst. City Counselor, Kansas City, for appellant.

Rope, Shanberg & Rope, I. Frank Rope, Arnold N. Shanberg, Herbert M. Rope, Kansas City, for respondent.

HYDE, Presiding Judge.

Action for $8,800 property damage from leakage of water from a city hydrant into plaintiff's basement. The jury found for defendant but the Court sustained plaintiff's motion for new trial on the ground of error in giving Instruction No. 11 at defendant's request. Defendant appealed from the order granting a new trial and contends both that Instruction No. 11 was correct and that plaintiff failed to make a submissible case.

Defendant says no submissible case was made for the reason that there was no evidence of any defect in the hydrant. It says plaintiff proved that on each occasion when it was damaged that the leak was stopped by a man turning off the hydrant, showing specifically that the hydrant had been turned on and not completely shut off but failing to show it was turned on by anyone for whose acts the City would be liable. Defendant says: "where evidence shows that the occurrence which caused plaintiff damage may have resulted from two or more causes, there must be substantial evidence tending to show that cause for which defendant would be liable was the actual cause before the plaintiff can recover," citing Waldron v. Skelly Oil Co., 363 Mo. 1146, 257 S.W.2d 615; Grindstaff v. J. Goldberg & Sons Structural Steel Co., 328 Mo. 72, 40 S.W.2d 702; Frazier v. Ford Motor Co., 365 Mo. 62, 276 S.W.2d 95. Plaintiff claims to have made a res ipsa case, relying on Lober v. Kansas City, Mo.Sup., 74 S.W.2d 815, saying it made a prima facie case of general negligence; and plaintiff also says the evidence was sufficient for the jury to find that the hydrant was defective because it was worn out.

It was admitted that the Water Department of the City was operated as a commercial enterprise and also for fire protection and cleaning the streets. Hydrants could be lawfully opened by employees of the Water Department, the Street Cleaning Department or the Fire Department. Sometimes they were opened by trespassers, boys in the summertime or contractors who want a little water, and permits were sometimes issued to take water from hydrants through meters. Hydrants were also opened to bleed lines, to remove discoloration and to reduce pressure. Loyd Riley, plaintiff's foreman, first discovered water running from the basement wall, the City was notified and the water stopped. This was June 23, 1951. The same thing happened on three other occasions (July 15, July 28 and August 21), and, each time, after the City was notified, he saw someone working on the water plug on the southwest corner of Fourth and Delaware adjacent to defendant's building. Mr. Koch, plaintiff's president, said on the occasion of the first leak, he heard a humming sound in the hydrant which stopped when a Water Department employee used a wrench on it but the water continued to flow for some time. On the three later occasions, water again ran into the basement but stopped after Water Department employees turned off the hydrant. Shortly after the last occurrence, the City had some people out who broke up the sidewalk around the hydrant and did some repair work, working on the valve.

The City's evidence was that on June 23 and August 21, two of the days of alleged leaking, and October 4, the hydrant was turned off by Water Department employees, and on April 1, 1952, six months after the last leakage, the hydrant was replaced because it was worn out, as part of the program for replacement of obsolete hydrants. All water plugs are constructed with two three-eighths inch drains in the base of the plug to prevent freezing and damage to the plug in cold weather, and if a hydrant is not turned off completely, water will flow from the water line through the drain. If a hydrant can be turned off

in the normal manner by turning the operating nut at the top of the hydrant, nothing is wrong with it. At the time of the occurrences, the streets at Fourth and Delaware were cleaned by street cleaners using two-wheeled carts. They used water hydrants in their work, but no record was kept of which hydrants they turned on. Due to the great flood, which occurred July 13, 1951, damaging the water system, there were no street cleaners in the area on July 15th. Records are kept of when the Water Department employees use any water hydrant. A search was made of these records and did not disclose any use of the hydrant by the Water Department during the time in question. It was also brought out in the testimony of the City's Superintendent of Distribution that Water Department records showed reports of the hydrant leaking and being turned off; that the records showed no complaints concerning other hydrants along Delaware Street; and that the records showed the hydrant involved was worn out and was ordered replaced on April 1, 1952. He did not know how old the hydrant was but said the rubber gasket of such a hydrant would be replaced only after thirty-five or forty years.

■ "Where a city owns and operates a water system for the dual purpose of supplying its inhabitants with water for revenue, a proprietary purpose, and also for the prevention of fires and for keeping the city sanitary and healthful, a governmental purpose, then it is the duty of the city to keep the same as a whole in repair and free from danger to others, and, if damage is done by defects in or lack of repair of the water mains or other appliances used concurrently in both capacities, then the city is liable." Lober v. Kansas City, supra, 74 S.W.2d loc. cit. 822; see also Lockhart v. Kansas City, 351 Mo. 1218, 175 S.W.2d 814; Adam Hat Stores, Inc., v. Kansas City, Mo.App., 307 S.W.2d 36. We do not find that plaintiff's evidence showed the specific cause of the leak or that there was nothing wrong with the hydrant. If the life of its rubber gasket was thirty-five to forty years, certainly the hydrant would not become "worn out" in a few months. We hold here as we did in the Lober case (74 S.W.2d loc. cit. 823): "This, however, is a res ipsa loquitur case, and the plaintiff made a prima facie case of general negligence by showing the facts from which negligence could be inferred by the jury."

Defendant contends that Instruction 11 was proper because the instructions authorizing a verdict for plaintiff, on each of the four counts of its petition (a separate count for damage on each of the four occasions alleged), stated its required finding in the following language: "if you further find and believe from the evidence that the defendant, its agents, servants and employees, acting within the scope of their employment, did * * * cause, allow or permit water to flow in, through and from said hydrant." Defendant says Instruction 11 properly limited its liability to acts of its Water Department employees, it not being liable under the Lober case, supra, for acts of street cleaners or firemen, or for trespassers, if any of them opened the hydrant and failed to turn it off completely.

■ Instruction 11 was as follows: "The Court instructs the jury that if you find and believe from the evidence that the water hydrant in question was not opened or completely closed by the Water Department, its agents or employees, or anyone under the direction of the Water Department, on any of the occasions mentioned in the evidence, then your verdict must be for the defendant on all counts of the plaintiff's petition." While defendant would have been entitled to an instruction to the effect that it would not be liable for acts of its employees while engaged in a governmental function (or trespassers until after a reasonable time for discovery), and there was some evidence of

street cleaners in the vicinity on some of the occasions, nevertheless this instruction was too broad in directing a verdict on *all* counts if on *any* of the occasions the hydrant "was not opened or completely closed by the Water Department, its agents or employees." Furthermore, this instruction completely ignored the liability of the City for negligent maintenance and failure to repair or replace the hydrant if it was defective because worn out and not operating properly. Under the evidence herein, there could be liability either for negligent operation or negligent maintenance. See McCaffery v. St. Louis Public Service Co., 363 Mo. 545, 252 S.W.2d 361, 364; Williams v. St. Louis Public Service Co., 363 Mo. 625, 253 S.W.2d 97, 101. We, therefore, hold that the trial judge was correct in finding this instruction prejudicially erroneous.

The order granting a new trial is affirmed.

All concur.

On Motion for Rehearing or to Transfer

PER CURIAM.

▪ Defendant argues that Instruction 11 was not incorrect. We reaffirm our ruling that it was erroneous for the reasons stated in the opinion. Moreover, we find that Instruction 11 was completely wrong in another respect because it said, as one of two alternatives, the jury must find for the defendant if they find "that the water hydrant * * * was not * * * completely closed by the Water Department, its agents or employees," etc. This literally means that even though Water Department employees were using it, and failed to completely close it, the City would not be liable, when exactly the opposite would be true.

The motion for rehearing or, in the alternative, to transfer to the Court en banc is overruled.