THE CITY OF CLINTON *to use of* THORNTON *et al.,* Appellant, v. HENRY COUNTY.

### Division One, May 8, 1893.

1. **Constitution:** STATUTE: EXEMPTION FROM TAXATION: LOCAL ASSESSMENTS. The constitution (Art. 10, Sec. 6) exempting from execution the property of the state, counties and other municipal corporations and Revised Statutes, 1889, sec. 7504, exempting lands and other property belonging to any city, county and other municipal corporations in the state, do not refer to or include special assessments for local improvements.

2. **Special Tax Bills:** EXEMPTION: PUBLIC PROPERTY. Mere general language used in a statute giving a city power to levy local assessments will not authorize the enforcement of special tax bills against property of the state or county strictly devoted to public uses.

3. **Statute:** NEW RIGHT AND REMEDY. Where a statute creates a new right and prescribes a remedy, the statutory remedy is exclusive.

| | |
|---|---|
| 115 | 557 |
| 120 | 680 |
| 115 | 557 |
| 127 | 462 |
| 115 | 557 |
| 146 | 564 |
| 147 | 282 |
| 148 | 653 |
| 149 | 253 |
| 115 | 557 |
| f 155 | 560 |
| 115 | 557 |
| 88a | 504 |
| 115 | 557 |
| 174 | ¹443 |

4. **Special Tax Bill**: EXCLUSIVENESS OF REMEDY: CITIES OF THIRD CLASS. A proceeding to enforce a special tax bill issued under Revised Statutes, 1889, sec. 1495, *et seq.* authorizing special tax bills for local improvements in cities of the third class is in the nature of an action *in rem* and compulsory payment can be enforced only by a sale of the property assessed.

5. ———: ———: ———. A general judgment cannot, in such suit, be rendered against a county for street improvement made in a court house square and assessed against the court house property.

*Appeal from Henry Circuit Court.*—HON. D. A. DeArmond, Judge.

AFFIRMED.

*Peak, Yeager & Ball* and *W. C. Stewart* for appellants.

(1) That the legislature intended to and did confer full and unrestricted power to authorize the city of Clinton to levy the assessment on the property held by the defendant in this case is perfectly certain, and the fact that both constitution and statutes expressly exempt this and other property from taxation, but nowhere from local assessment, demonstrates such intent. *Cook Co. v. Chicago*, 103 Ill. 646; *Adams Co. v. Quincy*, 130 Ill. 566; *Hassan v. Rochester*, 67 N. Y. 533; *Schools v. St. Louis*, 26 Mo. 468. (2) The courts of this state have also distinguished between general taxation for revenue, for support of the government of the state, including its subdivisions, and assessments for benefits conferred by local improvements; and have by a construction of the constitutional and statutory provisions, definitely and repeatedly held and determined, that the constitutional exemptions, as well as the statutory exemptions, made in pursuance thereof, relate only to general taxation for revenue, and do not relate to assessments for benefits. *Farrar v. St. Louis,*

80 Mo. 379; *Hassan v. Rochester*, 67 N. Y. 534–5; Dillon on Municipal Corporations [4 Ed.], sec. 773–777. (3) This court has held that the constitutional and statutory provisions in regard to exemptions from taxation intended to leave church property liable to assessments for local improvements; and that public property mentioned in said provisions, was liable to such assessment for precisely the same reason. *Lockwood v. St. Louis*, 24 Mo. 20; *Schools v. St. Louis*, 26 Mo. 468. The same rule of construction is adopted in New York. *In the matter of Mayor*, 11 Johns. 77; *Hassan v. Rochester, supra.* (4) Public property not being expressly exempted from assessments for local improvements, it cannot be exempted by implication; since it is the settled policy of this state that all exemptions shall be specifically stated. For the courts to proceed to declare exemptions beyond the point where the law stops, would be judicial legislation of the most pronounced kind. *St. Louis v. Ins. & Trust Co.*, 47 Mo. 150; *Railroad v. Maguire*, 49 Mo. 498; *Railroad v. Cass Co.*, 53 Mo. 17; *McLean Co. v. Bloomington*, 106 Ill. 214; Cooley on Taxation, [1 Ed.] 146–147. (5) An assessment not being a burden, like a tax, but being imposed where the value and utility of the property is enhanced by the improvement, there is "no more reason to excuse the public from paying for such benefits than there would be to excuse from payment where property is taken under the eminent domain." Cooley on Taxation [2 Ed.] p. 653; *Lockwood v. St. Louis, supra; Hassan v. Rochester, supra.* (6) Whether this public square, which has no public building on it, can be sold under execution or not, does not affect the power of the city to make this assessment, or the power of the courts to compel its payment. Public school property, cemeteries and railroad rights-of-way, either by express

statute or from considerations of public policy, cannot be sold under execution, and yet are held liable to such assessments and compelled to pay them. *Railroad v. Spearman,* 12 Iowa, 12; *Railroad v. Hanna,* 68 Ind. 562; *Railroad v. Connelly,* 10 Ohio St. 159; *Railroad v. Decatur,* 126 Ill. 92; *Baltimore v. Cemetery Co.* 7 Md. 517; *Lima v. Cemetery Co.,* 42 Ohio St. 129; *Cemetery, v. Buffalo,* 46 N. Y. 506; *Sioux City v. School Dist.,* 55 Iowa, 150. (7) Public policy that refuses the right of execution does not destroy the right to judgment, but merely requires resort to the usual yet extraordinary remedies of mandamus, sequestration of revenues or receiverships, as the nature of the case may require, in lieu of execution to enforce payment. *McLean Co. v. Bloomington,* 106 Ill. 209; 18 Ill. 276; *Lima v. Cemetery Co.,* and cases, *supra;* Freeman on Executions, sec. 22.

*James Parks & Son* for respondent.

(1) The whole estate of the county in the court-house square, reserved and dedicated, became the property of and was vested in the people of the state, for public use. It is, therefore, not subject to sale or transfer by the county voluntarily or unvoluntarily. *Rutheford v. Taylor,* 38 Mo. 315; cited with approval in *Brink v. Collier,* 56 Mo. 164; also in *Price v. Thompson,* 48 Mo. 361; *Cummings v. St. Louis,* 90 Mo. 259; *Trustees v. Conn.,* 4 Paige, 510; *Brown v. Manning,* 6 Ohio, 129; *Cincinnati v. White,* 6 Pet. 432; *Town v. Clark,* 9 Cranch, 192; *Rector v. Hart,* 8 Mo. 448. (2) Public squares in cities and villages are easements for the benefit of the public. The public square is as much of a highway as if it were a street, and neither the county nor the public can block it up, to the prejudice of the public nor of an individual;

nor can either assert a right to it, by enclosing it, beyond the limits of a reasonable curtailage (for a court house and offices), and the same principles and rules of property apply to such squares as to public highways. 2 Smith's Leading Cases [5 Am. Ed.] 222, 224, and cases cited; 2 Dillon on Municipal Corporation, sec. 644, *et seq.*; Bishop on Non-Contract Law, sec. 956. (3) On grounds of public policies, the property of a municipal corporation cannot be sold under execution. Freeman on Execution [1 Ed.] sec. 126; *Riggs v. Johnson*, 6 Wall, 166; *Weber v. Lee Co.*, 6 Wall. 210; *Klein v. New Orleans*, 99 U. S. 149; *Mernweither v. Garrett*, 102 U. S. 472; Dillon on Municipal Corporations [3 Ed.] sec. 576; *Hastings v. Wood*, 2 Mo. App. 148; Revised Statutes 1879, sec. 2344. On the same grounds, a mechanic's lien cannot be enforced against a school-house. *Abercrombie v. Ely*, 60 Mo. 23; *Dugan Cut Stone Co. v. Gray*, 43 Mo. App. 675; nor against a public bridge (*McPheeters v. Merimac Bridge Co.*, 28 Mo. 468), nor against bridges or other detached portions of railroads; *Knapp v. Railroad*, 74 Mo. 374, and cases cited; *Ireland v. Railroad*, 79 Mo. 572; nor can the salary of a public official be garnisheed for the same reasons of public policy, nor are public officers subject to garnishment. *Hawthorn v. St. Louis*, 11 Mo. 59; *Fortune v. St. Louis*, 23 Mo. 239; *Pendleton v. Perkins*, 49 Mo. 569; Revised Statutes, 1889, sec. 5220. (4) Public property held for governmental purposes, as a court house, cannot be sold to pay an assessment levied for the improvement of a street, unless a sale is *expressly* authorized by the statute, nor will such property be deemed to be within the general words of the statute, delegating in general terms the authority to levy local assessments. Statutes conferring a general authority are to be construed as operating upon property subject to legal process and not upon property held for governmental purposes, or

any of the local instrumentalities of government. Elliott on Roads and Streets, pp. 403-404; *Lowe v. Howard Co.*, 94 Ind. 553; *Pres. etc. v. Board*, 12 Ind. 620; *Worcester Co. v. Worcester*, 116 Mass. 193; *Essex Co. v. City of Essex*, 151 Mass. 141; Desty on Taxation, p. 1248; *Toledo Coughlin v. Toledo Bd. Ed.* 26 N. E. Rep. (Ohio) 403; *State v. Hartford*, 50 Conn. 89. (5) The power to levy assessments is a branch of the taxing power, and the property of the state is exempt from all taxation and all special assessments for local improvements, unless made subject to the same in express terms. It is not sufficient, in order to charge such property with such burdens, that the constitution or the statute fail in terms to exempt therefrom such property, but the law must in express terms provide that such property be liable. *State v. Hartford*, 50 Conn. 89; *Worcester Co. v. Worcester*, 116 Mass. 193; 2 Dillon [4 Ed.] sec. 773; *Erie Co. v. Erie*, 4 Cent. Rep. (Pa.) 305 and cases cited. *State v. Clinton Township*, 6 Cent. Rep. (N. J.) 830, and cases cited; *Camden v. Camden Village*, 1 N. E. Rep. 299, and cases cited. (6) Assessments made for benefits conferred by local improvements are an exercise of the taxing power. *State ex rel. v. St. Louis*, 62 Mo. 244; *State ex. rel. v. Richeson*, 76 Mo. 478; Dillon on Municipal Corporations [4 Ed.] sec. 752. (7) The power of local taxation for public improvements is put upon the ground of compensation, upon the reason that the property assessed is specially benefited and enhanced in value to the extent of the assessment. *Grading Co. v. Holden*, 107 Mo. 305; *Neenan v. Smith*, 50 Mo. 525; *Sheehan v. Hospital*, 50 Mo. 155; *Farrar v. St. Louis*, 80 Mo. 391. Elliott on Roads and Streets, p. 369. (8) The only remedy given for the collection of this assessment is by means of the lien created upon the property, which can only be enforced by a sale of such property. An action upon

such special tax bill is a statutory action to subject the property to plaintiff's demand. Such tax bill can only be collected out of the property charged with the benefit. It has no validity save as a lien on the land charged by it, and when the lien is destroyed, no charge remains. *Seibert v. Copp*, 62 Mo. 182; *St. Louis v. Allen*, 53 Mo. 56; *Worcester Co. v. Worcester*, 116 Mass. 193; *Roxbury v. Nickerson*, 114 Mass. 544; *West Roxbury v. Minot*, 114 Mass. 546; *Seibert v. Tiffany*, 8 Mo. App. 37; *Leach v. Cargill*, 60 Mo. 316; 2 Dillon on Muncipal Corporations, secs. 815, 816; *Neenan v. Smith*, 50 Mo. 525. (9) A personal judgment against the owner of property on account of assessments for public improvements is void; and any statute authorizing such judgment is unconstitutional. *Neenan v. Smith*, 50 Mo. 525; *St. Louis v. Allen*, 53 Mo. 44; *Carlin v. Cavendish*, 56 Mo. 286; *St. Louis v. Bressler*, 56 Mo. 350; *Riley v. Forsee*, 57 Mo. 390; *Louisiana v. Miller*, 66 Mo. 467.

BLACK, P. J.—The city of Clinton, a city of the third class and the county seat of Henry county, caused a number of its streets to be curbed, guttered and macadamized, and issued tax bills to the contractors in payment for the work; and this is a suit in the name of the city to the use of the contractors against Henry county to collect certain of the bills issued against the courthouse square. This square was duly set apart by the proper county authorities for a "public or courthouse square" as far back as 1836, and the county built a courthouse thereon in 1840. The square is still held by the county and used for such public purposes. The circuit court held that the property was not legally liable for the payment of the tax bills.

1. The first inquiry is whether the constitution or statutes exempts this property from such charges. Section 6 of article 10 of the constitution provides that

"the property, real and personal, of the state, counties: and other municipal corporations, and cemeteries, shall be exempt from taxation;" and sec. 7504, Revised Statutes, 1889, provides:   "The following subjects are exempt from taxation:    *   *   *   *Fourth*, lands and other property belonging to any city, county or other municipal corporation in this state, including market-houses, townhalls and other public structures with their furniture and equipments, and all public squares and lots kept open for health, use or ornament," etc.

While the statute and the constitution speak of taxes: and taxation, they do not mention local assessments. It is true such assessments are levied by virtue of the taxing power of the state, but there is a broad distinc- tion between local assessments, and taxes levied for general public purposes.   Thus it was held in *Lockwood v. St. Louis*, 24 Mo. 20, that church property was liable for special sewer assessments though the general authority given to the city to levy and collect taxes was confined to "property made taxable by law," and by the general law church property was expressly exempted from state and county taxation.   In *Sheehan v. Good Samaritan Hospital*, 50 Mo. 156, the charter of the defendant exempted its property from "taxation of every kind," and yet its real property was held liable for special street improvement assessments.   The exemption was held to relate only to ordinary taxes levied for general purposes, and not to special improve- ment assessments.

The whole subject was again considered in the recent case of *Farrar v. St. Louis*, 80 Mo. 379.   The assessments there in question were about to be levied for the purpose of paving, curbing and guttering a street.   The law under which the work was done pro- vided that the cost thereof should be levied on the abutting property according to the front feet of each

lot, and it was insisted that the law was void because it violated that clause of the present constitution, which declares that "all property subject to taxation shall be taxed in proportion to its value;" but this court held that the assessment was not a tax within the meaning of that clause of the constitution. It was also held that special local assessments were not included in the words of the eleventh section of article 10 of the constitution which declares that "said restrictions as to rates shall apply to taxes of every kind and description, whether general or special."

It must be taken as settled law that the clause of the constitution and the general law before quoted do not refer to or include special local assessments. It follows that this property, though held and used for public purposes, is not exempt from local assessments, either by the constitution or general law. Indeed, the general statute and the clause of the constitution relating to the exemption of property from taxation have nothing whatever to do with this case.

The question whether public property, such as courthouse property, should share in paying for street improvements is one open to the legislative will. We must therefore look to the statute relating to cities of the third class to see what the legislature has declared upon this subject. We repeat that the constitution, and general law relating to exemption from taxation, have no bearing upon the issue of law in this case. The question is one of delegated power, and not of exemption from taxation.

2. The law relating to cities of the third class, under which this work was done, provides that such cities shall have power "to enact ordinances" for designated purposes, and, among others, "to open and improve streets, avenues and alleys;" and, to pay therefor, "shall have power to make assessments in the

following manner:    *    *    *    *Third*, for paving, mac-
adamizing, curbing and guttering all streets, avenues
and alleys,    *    *    *    the assessment shall be made
for each block separately, on all lots and pieces of
ground on either side of such street or avenue, the
distance improved or to be improved, or on the lots or
pieces of ground abutting on such alley, in proportion
to the front foot." Revised Statutes, 1889, sec. 1495.

The assessments "shall be known as special assess-
ments" and shall be "levied and collected as a special
tax, and a special tax bill shall issue therefor, and
shall be paid in the manner provided by ordinance;"
and every such special tax bill "shall be a lien against
the lot of ground described in the same until paid."
Sec. 1496.

The tax bills are "assignable and collectible in an
action brought in the name of the city to the use of the
holder;" and it is provided further that the lien shall
continue for one year, or "until the final determination
of any legal proceedings to collect same." Sec. 1500.

The language of the law as to the property subject
to assessment is "on all lots and parcels of ground on
either side of such street." The question is, whether
such language includes property held by a county for
strictly public purposes.

It is a well settled principle of common law that the
Crown is not bound by a statute, the words of which
tend to restrain or diminish any of his rights or inter-
ests, unless he be specially named therein. 1 Bla. Com-
262. The same principle applies in favor of the states
in this country. Endlich on the Interpretation of Stat-
utes, sec. 161. Says Kent: "It is a general rule in the
interpretation of statutes limiting rights and interests
not to construe them to embrace the sovereign power or
government unless the same be expressly named therein
or intended by necessary implication." 1 Kent's Com-

mentaries [13 Ed.] 460.   Hence it is that as a general rule, tax laws are understood and intended to apply to private and not to public property.   Endlich on Interpretation of Statutes, sec. 163.

It is held in Massachusetts as it is here, that the exemption of the real estate of incorporated charitable and agricultural societies from taxation is an exemption from taxation for general public purposes, and not from taxation for local improvements (116 Mass. 181 and 189), but it is held by the same court in the next case that land of a county used for county purposes is not subject to taxation of any kind and hence not liable for local assessments.   *Inhabitants v. Mayor*, 116 Mass. 193.   There a sewer assessment had been levied upon property of the county used for a courthouse, jail and house of correction.   The proceeding was one by *certiorari* to quash the assessment.   Says the court: "Its property [property of the commonwealth] constitutes one of the instrumentalities by which it performs its functions.   As every tax would to a certain extent diminish its capacity and ability, we should be unwilling to hold that such property was subject to taxation in any form, unless it were made so by express enactment or by clear implication.   This property of the petitioners is not indeed, in legal form, the property of the commonwealth, but the authority by which the county holds it is derived from the statutes by which the duty is imposed upon the various counties of providing suitable court houses, jails and houses of correction."   Estates so held "for the uses and purposes of the commonwealth are essential to the administration of the executive and judicial duties of its government and are not to be deemed subject to taxation in any form, unless the intent of the legislature to render them so clearly appears."

The same principle was applied in the following local improvement cases, though the property sought to be asssessed was in fact and in form state property. *State v. Hartford*, 50 Conn 89; *County Commissioners v. Board of Managers*, 62 Md. 127; *Savings Bank v. State*, 69 Iowa, 24; and by this court in *Abercrombie v. Ely*, 60 Mo. 23. The effort in that case was to enforce a mechanic's lien against a school house which was public property. The words of the lien law were sufficiently general to embrace school houses and all other public buildings, but it was held that the terms of the statute should be restricted so as to apply only to property belonging to private individuals. We find nothing in the case of *Hassan v. Rochester*, 67 N. Y. 528, in conflict with what has been said. The judgment in that case stands upon the ground that the city charter specified the kind of state property there in question as subject to local assessments, and the opinion gives recognition to the general rule of interpretation applied in the cases just cited.

The statute giving to cities power to levy local assessments for street improvements uses the most general language. Such language is not sufficient to embrace the property of the state or property of the county which has been devoted to strictly public uses, which in fact constitutes one of the instrumentalities provided for carrying on the state government.

But there are other considerations not to be overlooked in seeking for the intention of the legislature. In the first place property owned by a county or other municipal corporation and used for public purposes cannot be sold on execution. It is against public policy to permit such property to be sold; for the effect of a sale would be the destruction of the means provided by law for carrying on the government. 2 Dillon on Municipal Corporations [4 Ed.] secs. 576–577; Freeman on

Executions [2 Ed.] sec. 126. And section 2344, Revised Statutes, 1879, is declaratory of the same principle. Hence it has been held that a school house cannot be sold under a judgment against the board of education, 69 Mo. 306. It is indeed clearly and distinctly admitted by the plaintiffs that this court house property cannot be sold to satisfy these assessments. The plaintiffs do not pray for a judgment enforcing the lien, the remedy and only remedy given by the statutes, but they ask a general judgment against the county.

In the next place, it is a general rule of law that where, as here, the statute creates a new right and prescribes a remedy, the statutory remedy is exclusive. Endlich on Interpretation of Statute, sec. 154. And the principle applies to the collection of these local assessments. *Roxbury v. Nickerson*, 114 Mass. 544; *West Roxbury v. Minot*, 114 Mass. 546; *Inhabitants v. Mayor, etc.*, 116 Mass. 193; *Edgerton v. School Township*, 126 Ind. 261. It was held in the case of *St. Louis to use v. Clemens*, 36 Mo. 468, under a law making tax bills a lien on the property assessed, and providing that the contractor might collect the tax bills by "ordinary process of law;" that the proceeding was one *in personam*, and that the contractor was entitled to a general judgment to be enforced by a general execution. But that case was overruled by the subsequent cases of *Neenan v. Smith*, 50 Mo. 526, and *St. Louis to use v. Allen*, 53 Mo. 44. These cases hold that local assessments can be upheld alone on the ground of compensation in benefits to the particular property assessed, and in view of which it was held that the words "ordinary process of law" meant such process as was adapted to the enforcement of the lien. The case last cited goes much further and holds, and holds distinctly, that a law attempting to authorize a general judgment over against the property owner on a special

tax bill would be unconstitutional and void. Since the ruling made in those cases it has been repeatedly held that the judgment must be, and can only be, one enforcing the lien against the particular property. Such is the settled law of this state. *Carlin v. Cavender*, 56 Mo. 286; *St. Louis to use v. Bressler*, 56 Mo. 350; *Seibert v. Copp*, 62 Mo. 182; *Louisiana v. Miller*, 66 Mo. 467; *Higgins v. Ausmuss*, 77 Mo. 351.

According to these adjudications, proceedings to enforce special tax bills are in the nature of proceedings *in rem*, and compulsory payment of the judgment can only be by a sale of the assessed property. As public property like that here in question cannot be sold on general or special execution, and as the legislature has provided no other remedy than that of enforcement of the lien, it is quite evident that the statute in question does not apply to or include property owned by a county and used for governmental purposes.

It is true the cases last cited were all suits against private property owners; and as it is within the power of the legislature to make property devoted to public uses liable for local assessments, and as it is contrary to public policy to permit public property to be sold, we may and do concede that the legislature can provide for the payment of local assessments against public property out of the general treasury. Such a provision would doubtless be sufficient to show an intent to make such property liable for these assessments; but the legislature has made no such provision. The argument, therefore, that the courts can devise a remedy where there is a right does not meet the issue in this case; for the real question is, whether the city had the power or right to levy the assessments upon public property, and we are unable to find any evidence of such a legislative intent.

The plaintiffs place much reliance upon the case of

## VOL. 115, APRIL TERM, 1893.    571

The City of Clinton ex rel. Thornton v. Henry Co.

*Public Schools v. St. Louis*, 26 Mo. 468. The report of that case shows that the school corporation based its right to injunctive relief on the sole ground that the general revenue law exempted its property from local assessments as well as from taxation for general purposes. This court ruled that question then, as it would now, against the schools. No other question was presented or considered. It may be, the city charter made the vast amount of property held by the schools liable for assessments for street improvements; but that was not the question in dispute. That case is authority for the conclusion reached in the first part of this opinion, but we do not see that the case goes any further. As to many of the other cases cited by plaintiffs, it may be observed that there is a wide difference between property held and used for strictly public uses, as for courthouse and jail purposes, and property held by corporations organized for private gain, though the property is in a sense devoted to public use, as the property of railroads and cemetery companies. This difference will distinguish many of the cases cited by counsel for the plaintiffs from the one now in hand. The property here in question is strictly public property, and on well settled principles of law cannot be held liable for these local improvement assessments until the legislature so says in clear terms or by necessary implication, and that it has not done by the statute relating to cities of the third class.

There is much merit in the argument that the public, the beneficial owner of the courthouse property, ought, as a matter of fairness, to bear a part of the cost of improving the streets, but the argument addresses itself to the legislature. Courts must declare the law as they find it.

The judgment is affirmed. BARCLAY, J., absent. The other judges concur.