SECURITY STATE BANK, a Banking Corporation, Plaintiff-Appellant, v. COUNTY OF DENT, Defendant-Respondent.—137 S. W. (2d) 960.

Division One, March 6, 1940.

*Geo. F. Addison* for plaintiff-appellant.

1052

*B. G. Dilworth* and *E. W. Bennett* for respondent.

DALTON, C.—On November 26, 1937, plaintiff obtained a final judgment for $6101.73 against defendant in the Circuit Court of Dent County on warrants and jury script. Thereafter plaintiff caused a general execution to be issued and a levy to be made on real estate of the defendant. Motion to quash the levy was duly filed, notice given, evidence heard, the motion sustained and the levy quashed. After motion for new trial was filed and overruled plaintiff appealed.

The motion to quash the levy alleged that the said real estate was purchased by Dent County with public funds for a public purpose, to-wit, to be used for erecting and maintaining a jail thereon; that said real estate had been and was being used for public purposes; that the property was near the court house and used in connection therewith for storing fire wood, lumber, tools, bridge materials and road machinery; and that the property was not subject to levy under execution on the judgment against the county.

Defendant alone offered testimony in the hearing on the motion. It tended to show that the said real estate, levied upon by the sheriff, was a vacant lot across the street north from the court house square in the City of Salem, Missouri; that about 1921 said real estate was purchased by the county court with public funds of said county and the deed was made to Dent County; that since the purchase of said lot it had been used for a public hitch rack and for the storing of cord wood for use as fuel in the county offices in the court house; that at various times the lot had been used as a storage place for lumber, bridge materials, road tools and machinery owned by the county; that objection was made to hitch racks about the public square and after the purchase of said lot the county court had pub-

lic hitch racks, a water fountain and a concrete watering trough built on the lot; and that the lot was the only public place provided by the county for hitching purposes.

Over plaintiff's objection that it was not the best evidence, defendant was permitted to prove by a witness, who was a member of the county court at the time of the purchase, that "the main idea" of the county court in purchasing the lot was to provide a place upon which to build a county jail.

Appellant assigns error as follows: (1) that there was no showing that the property levied on was exempt from execution; (2) that the lot was not used for any governmental purpose by defendant and the sale thereof would not interfere with any governmental function of defendant; and (3) that it was error to admit evidence of the purpose for which the lot was purchased, because it had not been used for such purpose. In argument appellant further insists that the evidence as to purpose was not the best evidence, and that no record showing the purpose for which the property was bought was introduced in evidence.

The hearing on the motion to quash the levy was purely a proceeding at law. Issues of fact and law were presented to the trial court for decision. No declarations of law were asked or given. The finding and judgment of the court, if based on substantial evidence, is conclusive. [Southern Coal Co. v. Shepard, 223 Mo. App. 112, 9 S. W. (2d) 257.]

Missouri authorities touching upon the particular matter under consideration are very limited. The Constitution of Missouri recognizes the several counties of the State "as legal subdivisions of the State." [Art. 9, Sec. 1, Constitution of Missouri, 15 Mo. Stat. Ann. 682.] Provision is made by law for the commencement of suits against counties in the circuit court of the particular county, and for the prosecution of such suits "to final judgment and execution." [Sec. 12108, R. S. 1929, 9 Mo. Stat. Ann. 6425.] An execution may, therefore, properly issue on a judgment against a county. [Catron v. Lafayette County, 125 Mo. 67, 28 S. W. 331.] Generally, in the absence of a statute, no execution lies against the property of a county. [7 R. C. L. 967, sec. 41; Maricopa County v. Hodgins (Ariz.), 50 Pac. 15, 101 A. L. R. 793, 799.]

Certain property of a county is, by statute, expressly exempt from attachment and execution, to-wit, "all courthouses, jails, clerks' offices and other buildings owned by any county or municipality, and the lots on which they stand, and all burial grounds." [Sec. 1161, R. S. 1929, 2 Mo. Stat. Ann. 1424.] It does not necessarily follow, however, that all property not expressly exempt from attachment and execution by said statute is subject to levy and sale on execution under a judgment against a county. The courts of this State have long recognized the general rule that "property

owned by a county or other municipal corporation, and used for public purposes cannot be sold on execution. It is against public policy to permit such property to be sold, for the effect of a sale would be the destruction of the means provided by law for carrying on the government.'' [The City of Clinton ex rel. Thornton v. Henry County, 115 Mo. 557, 568, 22 S. W. 494 (citing authorities); State ex rel. Kansas City v. School Dist. of Kansas City, 333 Mo. 288, 297, 62 S. W. (2d) 813, 816.] This general rule is recognized independently of the particular exemption statute.

Swamp land donated to the State of Missouri and by the State transferred to the several counties by an act which provided that ''the net proceeds of sales'' should ''become a part of the public school fund of the county'' was held not subject to execution ''and entirely exempt from any liability for ordinary county indebtedness.'' [State ex rel. Robbins v. County of New Madrid, 51 Mo. 82.] In the case of Catron v. Lafayette County, supra, it was said that if it had appeared from the record of the hearing on a motion to quash an execution that the property levied on was the public poor house and farm, such fact ''would have afforded good ground for quashing the levy.''

Where a judgment had been obtained against a board of education, and an attempt was made to enforce it by execution against property held by it for public school purposes, this court, in sustaining an injunction to prevent the sale of the property, said: ''As the board . . . is authorized to levy taxes, it would seem that the appropriate method of procedure, in such cases, would be by mandamus to compel the levy of a sufficient tax to pay the indebtedness. . . . Such a course would certainly avoid all difficulty, and oftentimes prevent the sacrifice of valuable property. But however this may be, whatever may be the proper course to pursue, we are confident that it would contravene the evident policy of our laws to permit school property to go to sale under fi. fa., either general or special.'' [State to use, etc., v. Tiedeman, 69 Mo. 306, 308.] Mandamus is recognized as a proper and legal remedy for the collection of judgments against municipalities having no property subject to execution. [See State ex rel. Hufft v. Knight (Mo. App.), 121 S. W. (2d) 762; City of Edina to use, etc., v. School District, 305 Mo. 452, 461, 267 S. W. 112, 115.]

In the case of the City of Clinton ex rel. Thornton v. Henry County, supra, it was held that special tax bills for paving the streets about the court house square could not be enforced against the property of the county devoted to strictly public uses nor could a general judgment be obtained against the county therefor. In the case of the City of Edina v. School District, supra, 305 Mo. 452, 267 S. W. 112, 115), this court said: ''The public schools have been entrenched as a part of the State Government and it is thoroughly established

that they are an arm of that government, and perform a public or governmental function. . . . They are purely public corporations, as has always been held of counties in this State, and not liable for torts or damages for negligence on the part of their employees or officers. . . . So that public school grounds occupy the same legal status as strictly public property as county courthouses and are as necessary to the normal functioning of the State Government. . . . Their property is strictly public property the same as that of counties, . . ." The court then held that school property was not subject to special tax bills for paving streets adjacent to the school property.

Since Missouri authorities dealing with this particular problem are limited, we must consider general rules and principles of law as applied in other states and as stated by dependable authorities.

That a serious matter of public policy is involved when a judgment creditor seeks to levy upon and sell county property is well stated in the case of Emery County v. Burresen, 14 Utah, 328, 47 Pac. 91, 37 L. R. A. 732, 60 Am. St. Rep. 898. The court said: "A county is one of the political subdivisions of the State, signifying a community, clothed with such extensive authority and political power as may be deemed necessary by the superior controlling power of the State for the proper government of its people residing within its borders, and for a proper administration of its local affairs. A county can raise revenue by taxation, make public improvements, and defray the expenses of the same by taxation, exercise certain specified judicial powers, and generally act within the authorized sphere created or abridged by the statute or Constitution of the State. The power of taxation furnishes the means by which it may pay its debts and meet obligations necessarily incurred for the many purposes of its existence and welfare. The county has control of the county property to be used and disposed of to promote corporate purposes. It does not possess property liable to execution in the same sense that an individual possesses it. Levying upon and selling the property or revenues of a county, or removing it, may work irreparable injury, and ruin its inhabitants."

In 3 McQuillin, Municipal Corporations (2 Ed.), page 787, section 1262, the rule is stated as follows: "Statutes often provides that court houses, jails and other buildings owned by municipalities and the lots on which they stand, shall be exempt from attachment and execution. But independent of express statutory exemption, as a general proposition, property, real and personal, held by municipal corporations, in trust for the benefit of their inhabitants, and used for public purposes, is exempt from such attachment and execution . . . the reason for the exemption is obvious. Municipal corporations are created for public purposes and for the good of the citizens in their aggregate or public capacities that they may prop-

erly discharge such public functions. Corporate property and revenues are essential, and to deny them these would impede and in some instances practically destroy the purposes of their creation . . . the mere fact that corporate property held for public purposes is being temporarily used for private purposes does not make it subject to execution.''

■ "The courts are practically unanimous in holding that the funds or credits of a municipality or other public body exercising governmental functions, acquired by it in its governmental capacity, may not be reached by its creditors by execution under a judgment against a municipality, or by garnishment served upon the debtor or depositor of the municipality.'' [89 A. L. R. 862, note; Snower v. Hope Drainage District (D. C., W. D. Mo.), 2 Fed. Supp. 931, 933.] The rule is not so strict in dealing with real estate of a county or municipality where it is established that such real estate is held for purely private purposes.

In 23 Corpus Juris, 355, section 105, the rule is stated as follows: "Where property of a municipality or other public corporation is sought to be subjected to execution to satisfy judgments recovered against such corporation, the question as to whether such property is levyable or not is to be determined by the usage and purposes for which it is held . . . and generally everything held for governmental purposes, is not subject to levy and sale under execution against such corporation. . . . Whether or not property held as public property is necessary for the public use is a political, rather than a judicial question.''

"The necessity for government service justifies that the property of public use of the municipality be exempt from execution just as it is necessary to exempt certain property of private individuals.'' (Reviewing authorities.) [Tan Toco v. Iloilo, 49 Phil. 52, 59.]

In 21 American Jurisprudence, 229, section 457, the rule is stated as follows: "As a general proposition, an execution may not be levied against the property of a state, county, or municipal organization, in the absence of a statute expressly granting such right. Even where such a right is granted, it is a general rule that an execution may not be levied on any property held by a municipal or other public corporation for public purposes, . . . . The same rule is applicable to school houses and other property used for school purposes. . . . The question as to whether property is reasonably necessary for public use must ultimately be determined judicially. Presumptively, however, all property of every kind held by a municipality is for the public use, and the onus of overcoming such presumption rests on the plaintiff in execution. In case of doubt, therefore, the question will always be resolved in favor of the city, the interest of the individual being of necessity subservient to the due and proper administration of government, or, in other words,

since the revenues of a city must, in a large measure, be raised by taxation, the creditor will be required to wait for payment rather than be permitted to embarrass the corporation by selling property needed for the public welfare.'' [See also 17 R. C. L. 145, sec. 43, and 22 Am. Jur. 76, sec. 95.]

In Beadles v. Fry, 150 Okla. 428, 82 Pac. 1040, 2 L. R. A. (N. S.) 855, 858, the rule is stated as follows: ''As to whether property is reasonably necessary for public use must ultimately be determined by the court, and in case of doubt it should be resolved in favor of the city, for the interest of the individual must be subservient to the due and proper administration of government.''

■ Under the statutes of this State counties may acquire real estate for certain purposes. ''The county court of any county in this state shall have power to acquire by purchase, for such county, improved or unimproved real estate for a site for a courthouse, jail, or poorhouse or infirmary; or, when the county owns such site or sites, to acquire by purchase improved or unimproved real estate as an addition to or enlargement of the same; . . . .'' [Sec. 12058, R. S. 1929, 9 Mo. Stat. Ann. 6410.] The county court is further authorized to pay for the real estate so acquired out of any money of the county treasury belonging to the contingent fund or out of the surplus of any other fund at the close of the fiscal year and after payment of outstanding warrants. [Sec. 12059, R. S. 1929, 9 Mo. Stat. Ann. 6411.] ''The county court shall designate the place whereon to erect any county building, on any land belonging to such county, at the established seat of justice thereof.'' [Sec. 12060, R. S. 1929, 9 Mo. Stat. Ann. 6411.] We must assume that the property in question was purchased for a lawful purpose and that the county court of Dent County acted lawfully in purchasing this property and in paying for the same out of public funds of the county. [Hollowell v. Schuyler County, 322 Mo. 1220, 18 S. W. (2d) 498, 499.] There is no evidence to the contrary. The evidence shows that the lot is located ''at the established seat of justice;'' and that it is located across the street north from the court house square.' It is apparent that said lot, by reason of its location and proximity to the courthouse, was suitable, convenient and available as a location for county buildings at the seat of government.

In addition, the evidence shows that since 1921 the lot has been used directly in connection with the court house property. It is admitted that cord wood for use as fuel in the county offices in the court house has been stored on the lot since the time of its purchase. Other personal property owned by the county, and held under the supervision of the county court, to-wit, road tools and machinery, and lumber and bridge materials, have been stored on the lot. The lot has also been used continuously for public hitch rack purposes at the seat of government.

■ We find nothing in the statutes requiring that real estate lawfully acquired by the county by purchase under the statutes be used immediately for the purpose for which it was acquired; nor do the statutes prevent a count court from lawfully exercising reasonable foresight for the county's future needs. Appellant presented no evidence tending to show that this lot was not needed, or would not reasonably be needed, within a reasonable time for governmental purposes. In determining the purpose for which this lot is now held by the county, we may consider the fact that it was lawfully purchased by the county court with public funds. We may consider its location with reference to the court house square and at the seat of government, its use in connection with the court house, its availability for future use, and also all other competent matters mentioned in evidence.

In addition, it may be said that exemption statutes have uniformly received liberal construction. [Nephler v. Rowland, 195 Mo. App. 386, 191 S. W. 1033, 1034; Prouty v. Hall (Mo. App.), 31 S. W. (2d) 103, 105.] It has been held unnecessary for lands constituting a homestead to be contiguous or physically connected so long as they are used in connection with the dwelling and its appurtenances. [Overfield v. Overfield, 326 Mo. 83, 30 S. W. (2d) 1073, 1076; Haggard v. Haggard (Mo.), 233 S. W. 18.]

We think that the evidence presented on the hearing of the motion to quash the levy was sufficient, prima facie, to show that the lot in question was held by the county for public governmental purposes and that it was, therefore, exempt from seizure on execution. Considering only the competent evidence in the record, and the inferences to be drawn therefrom, we are of the opinion that the order and judgment of the trial court quashing the levy is supported by substantial evidence.

■ There remains only the question of error in the admission of evidence. We have found no case where a trial court's ruling on a motion to quash a levy has been overturned on account of error in the admission of evidence. Appellant cites no authorities in support of this assignment of error or in support of the argument. All issues of fact on the hearing of this motion were submitted to and tried by the court. ''The presumption is that the court, in weighing the evidence, was governed by correct rules of law. Hence it is held that the same rules of strictness are not enforced, on appeals, where the trial was by the court.'' [Moffitt v. Hereford, 132 Mo. 514, 522, 34 S. W. 252; McCullough v. Phoenix Insurance Company, 113 Mo. 606, 616, 21 S. W. 207; Lewis v. Frankle, 158 Mo. App. 262, 266, 138 S. W. 64; Nevil v. Wahl, 228 Mo. App. 49, 55, 65 S. W. (2d) 123; U. S. Fidelity & Guaranty Company v. Goodson, 227 Mo. App. 456, 459, 54 S. W. (2d) 754; Gregar v. Broadway Auto Laundry (Mo. App.), 83 S. W. (2d) 142, 144; Hellman v. Bick, 55 Mo. App. 168, 170.]

Since there was competent substantial evidence in the record sufficient to support the finding and order of the trial court we must assume that the court disregarded all incompetent evidence and reached its decision in view of competent evidence. Lewis v. Frankle, supra. The error, if any, is not sufficient to work a reversal. The assignment is overruled.

Other assignments of error not briefed or mentioned under points and authorities, or in argument, will be considered as abandoned by appellant. [Wells v. City of Jefferson, 345 Mo. 239, 132 S. W. (2d) 1006, 1007.]

The judgment is affirmed. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.