259 S.W.2d 702 (1953)
BURGESS
v.
KANSAS CITY et al.
No. 21881.
Kansas City Court of Appeals. Missouri.
June 15, 1953.
David M. Proctor and T. James Conway, Kansas City, for appellant.
Arthur J. Kase and Charles Rubins, Kansas City, for respondent.
CAVE, Presiding Judge.
The respondent Burgess secured a final judgment for personal injuries against Kansas City and John Koury. A general execution was issued against said Koury, which was returned unsatisfied. Thereupon another general execution was issued against Kansas City and John Koury and, on the same day, garnishment was issued against certain banks of Kansas City attaching any funds which were deposited therein by the defendant City. The sheriff served the writs of garnishment, and interrogatories were filed asking said banks whether they, or any of them had any money or deposits belonging to the Water Department of Kansas City. All of said banks filed answer, stating that they had no such funds on deposit. Whereupon the respondent filed supplemental interrogatories to garnishee City National Bank and Trust Company, asking if it had on deposit any money or credits "arising out of the operation of the Water Department of Kansas *703 City, Missouri, and constituting funds collected from the water users of Kansas City * * *?" The Bank answered that it did have on deposit such funds. Kansas City then filed a motion to quash the garnishment for the reason that any such money on deposit in the bank was owned by the municipality and was not subject to garnishment. The question was submitted to the court on the motion without evidence. The court found that all funds collected by the City in its governmental capacity are exempt from garnishment, but that all money arising out of the operation of the Water Department of Kansas City and constituting funds collected from the water users of Kansas City are funds belonging to the City in its proprietary capacity and was subject to garnishment, and entered judgment accordingly. The City appealed.
The only question presented on appeal is whether the funds of the Water Department of Kansas City are subject to garnishment in aid of an execution to satisfy a judgment obtained in a personal injury action.
It is conceded that Kansas City owns and operates the waterworks plant which supplies water to the various city departments, and for various city functions and to the public. It is also conceded that mandamus is a proper procedure to enforce a judgment against a municipality. Section 513.410, RSMo 1949, V.A.M.S.; State ex rel. Hufft v. Knight, Mo.App., 121 S.W.2d 762. But the respondent contends that is not the only remedy. He asserts that a municipality which owns and operates a waterworks does so in a proprietary capacity and any funds received from such an operation are subject to garnishment.
Our Constitution and statutes authorize municipalities to erect, maintain and operate waterworks, electric light plants, etc. Section 26(e), Art. VI, 1945 Constitution, V.A.M.S.; Chap. 91 RSMo 1949, V.A.M.S.1949. It is well settled in this state that when such plants are so operated the municipality does so in its proprietary capacity and not in its governmental capacity. Lockhart v. Kansas City, 351 Mo. 1218, 175 S.W.2d 814; Vice v. City of Kirksville, 280 Mo. 348, 217 S. W. 77; Riley v. City of Independence, 258 Mo. 671, 167 S.W. 1022. However, these and similar cases were discussing the question whether a city, operating a water or electric light plant, was liable for the negligence of one of its employees therein, and held that it would be because the operation of the plant was not strictly governmental but proprietary in nature. But it does not follow that the funds derived from the operation of such a plant are subject to garnishment in satisfaction of a general judgment against the City.
The overwhelming weight of authority is that property which is owned, controlled and operated by a county or municipality in its governmental capacity, is not subject to execution by a judgment creditor. Security State Bank v. Dent County, 345 Mo. 1050, 137 S.W.2d 960; 89 A.L.R. 864. Respondent concedes that to be the rule. The question that gives the courts the greatest concern is whether the property and the funds arising from the operation of a public utility, such as waterworks, which is owned by a municipality, are subject to execution.
As stated, supra, our Constitution and statutes authorize municipalities to construct or purchase waterworks and to operate the same, but this can be done only by a vote of the people, financed with public funds, and operated in accordance with such constitutional and statutory authority, the details of which are unnecessary to discuss. Since our courts hold that when a municipality acquires a waterworks plant it does so in its "proprietary or private corporate capacity," it is necessary to inquire just what is meant by those words. The general rule is that the words "proprietary or private capacity" are used in a relative sense to signify functions which are not governmental, and which are sometimes undertaken by corporations only quasi public. Municipal corporations cannot be constitutionally authorized to undertake any functions which are really private. 19 R.C.L., § 9, p. 698; 37 Am.Jur., § 114, p. 728. Judge *704 Dillon says: "But that a municipal corporation is in any just view a private corporation, or possesses a double character, the one private and the other public, although often asserted, is only true in a modified sense. In their nature and purposes, municipal corporations, however numerous and complex their powers and functions, are essentially public." Dillon on Municipal Corporations, 5th Ed., Vol. 1, § 38, p. 68.
In Marin Water & Power Co. v. Town of Sausalito, 49 Cal.App. 78, 193 P. 294, 296, the Court of Appeals of California, said: "A city is never other than a public corporation, whether exercising its governmental powers, or other powers, in the operation of public utilities, or acting in the quiescent state of a property owner. The fact that it is a public corporation does not determine the question whether or not its property is subject to execution. The true rule is that the property which it holds for the purpose of exercising its governmental powers or for the purpose of exercising its constitutional power to operate waterworks to supply its inhabitants with water or other like public purposes is not subject to execution; the reason being that to subject it to sale would interfere with the exercise by the city of some of the powers for which it was organized. On the other hand, property which it holds merely as a proprietor, devoting it to no use of a public character, such as lands acquired or held for other than public purposes and not in trust for public use, is subject to execution, unless some statutory or constitutional provision forbids it. * * * The property here proposed to be taken in execution was used for public purposes and was necessary therefor, and hence it comes within the classes first described." (Italics ours.) See, also, Dillon on Municipal Corporations (3rd. Ed.), Vol. 2, p. 572. The respondent says the California case is not in point because that state does not recognize the rule that a municipally operated water plant is conducted in its proprietary capacity instead of its governmental capacity. This contention is unfounded. On page 294 of 193 P. of the opinion it is clearly held "that in administering such a public utility as a water system a municipality is engaged in the exercise of proprietary rather than governmental powers, * * *."
In Security State Bank v. Dent County, supra, it is said, 137 S.W.2d 961: "The courts of this state have long recognized the general rule that `property owned by a county or other municipal corporation, and used for public purposes cannot be sold on execution. It is against public policy to permit such property to be sold, for the effect of the sale would be the destruction of the means provided by law for carrying on the government.'" It is true the court was discussing the question whether a vacant lot, which had been purchased by Dent County for the purpose of the erection of a jail, could be sold under execution. But the paramount thought and distinguishing factor appearing in most of the authorities is whether the property sought to be levied on is used by the municipality for public purposes. We think there can be no doubt that the waterworks of Kansas City is primarily owned and operated for public purposes. In 21 Am.Jur., § 457, p. 230, the general rule is stated to be: "The question as to whether property is reasonably necessary for public use must ultimately be determined judicially. Presumptively, however, all property of every kind held by a municipality is for the public use, and the onus of overcoming such presumption rests on the plaintiff in execution."
In Speas v. Kansas City, 329 Mo. 184, 44 S.W.2d 108, 112, the Supreme Court was discussing the constitutional provisions authorizing municipalities to construct or acquire certain public utilities, and called attention to the fact that section 12 of Art. 10 of the 1875 Constitution authorized certain municipalities to own and to operate waterworks "`for the use of the city or its citizens' * * *." It was also pointed out that the charter of Kansas City placed certain restrictions upon the purposes for which the City might acquire waterworks, and because of the pertinency of that discussion to the issue now under consideration, we quote a portion thereof, 44 S.W.2d 113: "However, Kansas City is authorized by sections 8 and 11 of article 1 of its charter to acquire and to operate waterworks for public purposes only, and the *705 acquisition or operation of waterworks by it for purposes other than public purposes, even though so authorized by its charter, would be in violation of section 3 of article 10 of the Constitution of Missouri, [V.A. M.S.] which says: `Taxes may be levied and collected for public purposes only.' Is the charter power of Kansas City to supply water to nonresidents in conflict with its charter power to acquire and to operate waterworks for public purposes only or with the constitutional provision that taxes may be used for public purposes only? We think not, because the charter power of Kansas City to supply water to nonresidents may be exercised, as was doubtless intended by the framers of its charter, for the benefit of the city and its inhabitants. In other words, if Kansas City acquired and is operating its waterworks primarily for the purpose of supplying water for its own needs and the needs of its inhabitants, and is incidentally selling surplus water to nonresidents, without impairing the usefulness of its waterworks for said primary purpose, such exercise of its charter power to supply water to nonresidents is not inconsistent with its charter power to acquire and to operate waterworks for public purposes only, nor with the constitutional provision that taxes may be used for public purposes only. In this conclusion, we are amply supported by rulings in other jurisdictions." (Citing many cases.)
It is our conclusion that Kansas City owns and operates its waterworks in a proprietary capacity, as above defined, and that it does so for public purposes only, as authorized by the Constitution and its charter; and that neither the plant nor the receipts therefrom are subject to execution. Respondent has an adequate remedy by mandamus if the city refuses to satisfy his judgment.
The respondent cites notes found in 89 A.L.R. p. 864; 19 R.C.L. § 339, p. 1050; Murphree v. City of Mobile, 108 Ala. 663, 18 So. 740, and City of Hazard v. Duff, 287 Ky. 427, 154 S.W.2d 28. The citation in A.L.R. relates to the question whether property or funds owned by municipalities and acquired by it in its governmental capacity may be reached by execution. That is not the question confronting us. The citation in 19 R.C.L. does relate to the question before us, and announces the rule that property owned by a municipality "in its private or proprietary capacity and is not devoted to any public use" is subject to execution. That rule is not inconsistent with our holding. In the Murphree case the court held that a small tract of land, owned by the city outside its corporate limits and not used for any public purpose, was subject to execution. The opinion of the Kentucky Court of Appeals, in City of Hazard v. Duff, supports respondent's contention, but we believe it is out of harmony with the weight of authority and are not disposed to adopt the theory of that case.
It follows that the judgment should be reversed and the cause remanded with directions to the trial court to sustain the motion of Kansas City to quash the writs of garnishment which have been issued herein, and to discharge said garnishees. It is so ordered.
All concur.